IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-5733

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES T. CONAWAY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

( December 17, 1993 )

Before HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Charles Conaway gave the government financial records to prove he paid his taxes. Analysis of the records led to a different conclusion and a jury convicted him of multiple counts of tax evasion. Conaway mounts four challenges to his convictions, alleging that the government broke an agreement not to prosecute him, that he produced his records during plea negotiations, that the government incorrectly estimated his actual income, and that the government offered insufficient proof of its estimate. We affirm his convictions.

The U.S. Attorney for the Western District of Texas wrote Charles Conaway on June 8, 1989, and then wrote his counsel on September 11, 1989. The letters informed Conaway of a grand jury

investigation into a violation of currency transaction reporting requirements he allegedly committed while buying a house in 1988, and invited him to appear before the grand jury with certain financial records. Conaway testified on November 17, 1989, and turned over his records in January 1990. Subsequent IRS analysis of his bank deposits and cash expenditures indicated that he had understated his income from his law practice by $43,475.89 for 1985, $52,952.89 for 1986, $8,102.82 for 1987, and $69,014.17 for 1988.

A grand jury then indicted Conaway on four counts of tax evasion[1] and one count of structuring currency transactions to evade reporting requirements.[2] A jury found him guilty of willfully attempting to evade his 1986, 1987, and 1988 income taxes and of knowingly and willfully structuring currency transactions to evade reporting requirements. The jury acquitted him of the tax evasion charge for 1985. He received three concurrent prison terms of fourteen months, followed by two years of supervised release and two years of probation, along with an order to pay $200 in special assessments and $1,670.40 in costs.[3]

---

[1]26 U.S.C. § 2701.

[2]31 U.S.C. § 5324; 18 U.S.C. § 2.

[3]The court imposed imprisonment and supervised release pursuant to the Sentencing Guidelines, as the structured transaction and the filing of his 1987 and 1988 tax returns took place after the Guidelines took effect. As the filing of his 1986 return predated the Guidelines, the court imposed a two year sentence, suspended its execution, and imposed two years of probation pursuant to 18 U.S.C. § 3651.

I.

Conaway contends that the government promised not to prosecute him for structuring if he produced certain records and testified before the grand jury. He says the indictment should be dismissed because the government failed to comply with the agreement. See United States v. Melton, 930 F.2d 1096, 1098 (5th Cir. 1991).

We are not persuaded that the district court clearly erred in concluding there was no agreement not to prosecute. See United States v. Weiss, 599 F.2d 730, 735-36 (5th Cir. 1979). The September 11, 1989 letter inviting Conaway to appear before the grand jury expressly stated that the invitation did not constitute an agreement not to prosecute. Further, Conaway received warnings in both of the government's letters and at his appearance before the grand jury that any statements he made or documents he produced could be used against him. While the record indicates that the prosecutor considered not indicting Conaway if IRS investigation of his finances showed that he had not engaged in illegal activity, no evidence shows an agreement not to prosecute Conaway conditioned only on his testifying or producing records.

II.

Alternatively, Conaway argues that the district court should have suppressed the records he turned over to the grand jury, contending that those records deserved protection because he turned them over as part of plea negotiations. See Fed. R. Crim. P. 11(e)(6); Fed. R. Evid. 410. This circuit uses a two-part test to evaluate such claims. United States v. Robertson, 582 F.2d 1356

(5th Cir. 1978) (en banc).  The trial court first determines whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and then determines whether the accused's expectation was reasonable given the totality of the objective circumstances.  Id. at 1366.

The district court concluded that Conaway did not satisfy either prong of the Robertson test, and we find nothing clearly erroneous in those conclusions.  See United States v. Maldonado, 735 F.2d 809, 814 (5th Cir. 1984).  Conaway testified before the grand jury about his alleged structuring offense, denying that he was a tax evader and claiming that he had paid his taxes.  The prosecutor, impressed by his testimony, gave Conaway an opportunity to corroborate his claims with documentary proof by furnishing his records, reminding him on several occasions that the government could use his statements and records against him.  As any promise of lenience the government made was conditioned on the result of the investigation of Conaway's records, its promise imposed no obligation when evidence of wrongdoing emerged from that investigation.  United States v. Weiss, 599 F.2d 730, 738 (5th Cir. 1979).  Cf. United States v. Herman, 544 F.2d 791, 798 (5th Cir. 1977) (statements made in the course of seeking the dropping of a murder charge in exchange for a robbery guilty plea found inadmissible).  See generally Robertson, 582 F.2d at 1365 (noting that "not every discussion between an accused and agents for the government is a plea negotiation").  The government had no greater obligation in this case than if Conaway had decided to confess.

4

United States v. Cross, 638 F.2d 1375, 1380 (5th Cir. 1981), modified on other grounds, 655 F.2d 50 (5th Cir. Unit A Sept. 1981); Robertson, 582 F.2d at 1368.

## III.

Conaway next contends that the government's proof of his actual income was insufficient because it included no evidence about his yearly net worth. A successful prosecution under 26 U.S.C. § 7201 requires proof of willfulness, the existence of a tax deficiency, and an affirmative act of evasion or attempted evasion of the tax. Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Chesson, 933 F.2d 298, 303-04 (5th Cir.), cert. denied, 112 S.Ct. 583 (1991). To prove a tax deficiency the government must establish that the taxpayer had unreported income and that such income was taxable. See Chesson, 933 F.2d at 306. Proving taxable income often requires indirect methods of proof sufficiently reliable to overcome the doubts inherent in the use of circumstantial evidence. See United States v. Boulet, 577 F.2d 1165, 1167-68 & 1167 n.3 (5th Cir. 1978), cert. denied, 439 U.S. 1114 (1979).

Conaway argues that the government used an "expenditures" method of proving his unreported income. This technique focuses on a taxpayer's expenditures during a certain period as proof of income received. See United States v. Newman, 468 F.2d 791, 793 (5th Cir. 1972), cert. denied, 411 U.S. 905 (1973). The taxpayer's net worth is calculated for each taxable year at issue. A change in net worth during a given year exceeding reported taxable income

after adjustment for deductions and exemptions supports an inference that the increase was unreported taxable income. Boulet, 577 F.2d at 1167 n.3. Based on this characterization of the government's methodology, Conaway argues that the government failed to prove his net worth for each year at issue, and that the judge erred by not instructing the jury on the government's burden to prove his net worth for each year for which it sought a conviction.

We find both claims of error groundless because the government did not employ an "expenditures" method of proof. The government used a different method of proving unreported income, which analyzed Conaway's cash expenditures and bank deposits. Cash expenditures and bank deposits exceeding reported income after adjustment for applicable exemptions and deductions supports an inference that the taxpayer had unreported income. Boulet, 577 F.2d at 1167; United States v. Parks, 489 F.2d 89, 90 (5th Cir. 1974) (per curiam). This method does not require proof of net worth. See Boulet, 577 F.2d at 117 & n.3. See also United States v. Abodeely, 801 F.2d 1020, 1024 (8th Cir. 1986). Such proof is not required because the evidence of bank deposits suffices to raise the inference that the taxpayer's income came from a taxable source. See generally United States v. Penosi, 452 F.2d 217, 219 (5th Cir. 1971) ("[T]he government must establish, either directly or inferentially, that the expenditures were made from a taxable source of income."), cert. denied, 405 U.S. 1065 (1972). Cf. Marcus v. United States, 422 F.2d 752, 755 (5th Cir. 1970) (reversing a conviction because "[t]he Government failed to lay any

6

foundation to indicate that the expenditures came out of current income").  We find no deficiency in the government's proof or the court's instruction.

IV.

Conaway's fallback position is that the government's evidence was insufficient to convict him under the bank deposits and expenditures method.  We examine this argument bearing in mind the different burdens and presumptions at work in this type of tax evasion prosecution.  The government must prove to the jury the elements of section 7201 beyond a reasonable doubt.  E.g., Boulet, 577 F.2d at 1168.  To do so, the government must establish the defendant's cash on hand at the beginning of each of the disputed years with reasonable certainty, while negating all other sources of nontaxable income during the same period.  It may negate other income sources by proving that an adequate investigation did not disclose nontaxable sources of income.  Id.  If the trial judge does not believe the government has met these burdens, it can take the case from the jury because the government has not demonstrated the reliability of the circumstantial evidence upon which the jury would base its decision.  Id. at 1170.  However, if the government satisfies those burdens, and does so in a way free of reasonable doubts, "the defendant remains silent at his peril" and the jury may find the defendant guilty.  United States v. Holland, 348 U.S. 121, 138-39 (1954); Boulet, 577 F.2d at 1170.

Conaway first challenges a key piece of evidence in the government's proof of his cash on hand.  During the disputed years,

7

Conaway deposited some cash from his law practice into a safe deposit box, writing the amount of cash in the box on the deposit dates on a business card he kept in the box.  The government used this card as the basis for its determination of his yearly cash on hand.  The amounts on the back of the card were listed with corresponding dates and years.  The eight entries on the back of the card include one for 1985, six in chronological order for 1986, and one in 1987. On the front of the card, seven entries without corresponding years appear in a chronological order running from February 25 to November 18.  Conaway challenges the government's contention that the notations without corresponding years listed on the front of the card fell in 1985.

The jury acquitted Conaway of tax evasion for 1985, so the accuracy of the government's estimated cash on hand for the beginning of 1985 is no longer important.  The question is whether without the dates on the front of the card the government's estimates of cash on hand at the beginnings of 1986, 1987, and 1988 are sufficiently certain.

We conclude that they are sufficiently certain.  The six entries dated 1986 were made in chronological order and cover the period from January 20, 1986 to December 8, 1986.  None of the notations without corresponding years fall closer to December 31, 1985 than the entry for January 20, 1986, and none fall closer to December 31, 1986 than the entry for December 8, 1986.  The IRS could base its estimates of cash on hand at the beginning of 1986 and 1987 on this series of entries with reasonable certainty.  See

8

generally <u>Boulet</u>, 577 F.2d at 1170 (noting that "[t]he prosecution was not required to prove the opening cash figure with mathematical exactitude").

As for 1988, the IRS had complete safe deposit box access records for the period from April 22, 1987, through May 22, 1989, and none of the dates on the front of the card corresponded to any access date during that period. A reasonable estimate of cash on hand at the beginning of 1988 could thus exclude the series of entries on the front of the card from the calculation.

Conaway also contests sufficiency by arguing that the government did not investigate other sources of cash on hand. However, he does not show that he offered the government any information about cash sources besides the safe deposit box. We cannot reasonably expect the government to find secret cash hoards without taxpayer assistance. See <u>United States v. Normile</u>, 587 F.2d 784, 786 (5th Cir. 1979). See also <u>United States v. Johnson</u>, 319 U.S. 503, 518 (1943) (declining to hold that "concealment is an invincible barrier to proof"). The IRS agent's investigation of the safe deposit box in this case satisfied the government's burden.

AFFIRMED