T.C. Memo. 1996-305


UNITED STATES TAX COURT


JOHN VAN HEEMST, Petitioner $v$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 24252-93, 24253-93.[1]      Filed July 8, 1996.


John Van Heemst, pro se.

James F. Kearney, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, Judge:  Respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows:

---

[1] These cases were consolidated for purposes of trial, briefing, and opinion and will hereinafter be referred to as the instant case.

|  |  | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6661 |
| 1987 | $21,182 | $15,887 | [1] | $5,296 |

[1] 50 percent of the interest payable pursuant to sec. 6601 with respect to the portion of any underpayment that is due to fraud.

|  |  | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6653(b)(1) | Sec. 6654 |
| 1988 | $10,300 | N/A | $7,725 | $659 |
| 1989 | 16,103 | $12,077 | N/A | 1,089 |

Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided in the instant case are:

(1) Whether petitioner is entitled to a deduction for home mortgage interest for taxable year 1987 in an amount greater than that allowed by respondent;

(2) whether petitioner failed to report income from a sole proprietorship for each of taxable years 1987, 1988, and 1989 in the amounts determined by respondent;

(3) whether petitioner is liable for self-employment tax for each of taxable years 1987, 1988, and 1989;

(4) whether petitioner is liable for the additions to tax for fraud pursuant to section 6653(b)(1)(A) and (B) for taxable year 1987 and section 6653(b)(1) for taxable year 1988, and for fraudulent failure to file pursuant to section 6651(f) for taxable year 1989;

(5) alternatively, should petitioner not be held liable for the additions to tax for fraud, whether he is liable for the addition to tax for failure to file timely pursuant to section 6651(a)(1) for each of taxable years 1987, 1988, and 1989;

(6) alternatively, should petitioner not be held liable for the additions to tax for fraud, whether he is liable for the additions to tax for negligence pursuant to section 6653(a)(1)(A) and (B) for taxable year 1987 and section 6653(a)(1) for taxable year 1988;

(7) whether petitioner is liable for the addition to tax for a substantial understatement of income tax pursuant to section 6661(a) for taxable year 1987; and

(8) whether petitioner is liable for the addition to tax for failure to pay estimated income tax pursuant to section 6654(a) for each of taxable years 1988 and 1989.

## FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated herein by reference and are found accordingly.[2]

---

[2] In the stipulation of facts, respondent objected to certain exhibits offered by petitioner, some of which petitioner has cited on brief. Respondent, however, has neither addressed those objections on brief nor advanced any argument concerning them. We therefore consider those objections abandoned. Midkiff v. Commissioner, 96 T.C. 724, 734 (1991), affd. sub nom. Noguchi v. Commissioner, 992 F.2d 226 (9th Cir. 1993).

At the time the petitions in the instant case were filed, petitioner resided in Sarasota County, Florida.

Petitioner was born in The Netherlands on November 14, 1938. He immigrated to Canada sometime thereafter and became a citizen of that country. Petitioner was involved in the construction business in Ontario, Canada, until 1976. Petitioner immigrated to the United States during that year.

On April 7, 1977, petitioner married Colleen Murphy, and the marriage continued through the years in issue. Ms. Murphy also goes by the name "Kelly Murphy". During the years in issue, Ms. Murphy used the names Colleen Van Heemst and Kelly Van Heemst. Petitioner and Ms. Murphy were divorced no earlier than April 15, 1991.

In 1978, petitioner started Cape Town Development, Inc. (Cape Town Development), a corporation that built commercial and residential properties, of which he was the president and sole shareholder. The corporation ceased operations, possibly during 1986, and filed for bankruptcy during 1986 or 1987. Ultimately, petitioner and Ms. Murphy satisfied the claims of Cape Town Development's creditors because they were guarantors of all debts incurred by that corporation. Cape Town's bankruptcy proceeding was dismissed in 1988. Petitioner did not have a large amount of assets after that bankruptcy.

During the years in issue, petitioner and Ms. Murphy jointly owned and operated a sole proprietorship known as "Pieces of

Eight", which was a retail jewelry store located in Captiva, Florida. In order to hide his assets from creditors, petitioner claimed that Kathleen Murphy owned Pieces of Eight. Kathleen Murphy, the sister of Ms. Murphy, never had an ownership interest in Pieces of Eight and had nothing to do with the business. Petitioner maintained the books for Pieces of Eight. During the years in issue, a checking account was maintained for Pieces of Eight with Citizens and Southern National Bank. During the years in issue, petitioner issued checks on the account of Pieces of Eight to pay personal expenses.

During 1987, petitioner informed Thomas Louwers, the accountant who prepared petitioner's and Ms. Murphy's return for that year, that Kathleen Murphy, who Mr. Louwers understood to be Ms. Murphy's sister, owned Pieces of Eight. Petitioner also informed Mr. Louwers that petitioner was only an employee of Pieces of Eight. Petitioner provided Mr. Louwers with an asset purchase agreement (asset purchase agreement) in which Kathleen Murphy purported to sell the assets of Pieces of Eight to Michael Van Heemst, petitioner's son, as of the end of 1987. Michael Van Heemst was then a high school student and part-time employee of Pieces of Eight. Michael Van Heemst signed the asset purchase agreement at the insistence of petitioner. None of the sale price was ever paid. Petitioner informed Mr. Louwers that Michael Van Heemst owned Pieces of Eight for years after 1987, and Mr. Louwers prepared 1988 and 1989 income tax returns for

Michael Van Heemst reflecting the income of Pieces of Eight. Petitioner provided Mr. Louwers with the information concerning Pieces of Eight that was used for purposes of preparing financial statements and tax returns.

For taxable year 1987, petitioner filed a joint Federal individual income tax return (1987 return) with Ms. Murphy.[3] On the 1987 return, petitioner and Ms. Murphy reported income from the sources and in the amounts shown below:

| Source | Amount |
|---|---|
| Form W-2 wages (Ms. Murphy) | $10,000 |
| Form W-2 wages (petitioner) | 10,000 |
| Taxable interest income | 478 |
| Nonpassive income from S corporation (Pieces of Eight Dive Center, Inc.) | 411 |
| Total income reported per return | 20,889 |

The Forms W-2 for both petitioner and Ms. Murphy indicate as employer "Kathleen Murphy, Pieces of Eight, PO Box 1124, Captiva, Fl 33924".

Petitioner and Ms. Murphy claimed one personal exemption for each of themselves and a dependency exemption for petitioner's 17-year-old son, Jason, who lived with them. Additionally, they claimed itemized deductions on Schedule A in the amounts shown below:

---

[3]

The notice of deficiency for 1987 was issued to both petitioner and Ms. Murphy. She did not file a petition with respect to that notice and, accordingly, is not a party to the instant case.

| Item | Amount |
|------|--------|
| Real estate taxes | $5,519 |
| Home mortgage interest | 25,200 |
| Personal interest | |
| ($944 less nondeductible portion) | 614 |
| Cash contribution | 70 |
| Total itemized deductions claimed | 31,403 |

Consequently, for the taxable year 1987, petitioner and Ms. Murphy reported negative taxable income in the amount of $16,214 and total tax due of zero. None of the activity of Pieces of Eight, except as noted above, was reported on the 1987 return.

The face of the 1987 return is date-stamped received at the Internal Revenue Service Atlanta Service Center on October 24, 1988. Included with the 1987 return is a Form 4368, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, and a Form 2688, Application for Additional Extension of Time to File, both of which were signed by the return preparer, Mr. Louwers. The Form 2688 requested an extension until October 15, 1988, to file the 1987 return and represented that petitioner and Ms. Murphy needed the extension because they were "awaiting K-1 from Subchapter S corporation". The form further indicates that approval for the extension was granted.

Petitioner filed no Federal individual income tax return for taxable years 1988 or 1989. Petitioner, however, was aware of his obligation to file returns. For those years, Ms. Murphy

filed delinquent Federal individual income tax returns, claiming the filing status of married, filing separately.

During the initial stage of the audit for the years in issue, which began during or about October 1990, petitioner told respondent's agent that (1) he was merely an employee of Pieces of Eight, (2) the agent was not to ask him any questions about Pieces of Eight, and (3) the agent could not visit its store. Petitioner also represented to respondent's agent that Pieces of Eight had been owned by Kathleen Murphy, a woman he had never seen. Petitioner later told respondent's agent that Kathleen Murphy was an alias used by Ms. Murphy. Petitioner also claimed that Kathleen Murphy had sold the business to Michael Van Heemst, petitioner's 17-year-old son, and showed respondent's agent the asset purchase agreement. Petitioner admitted to respondent's agent that none of the sale price had been paid and that he did not know where Kathleen Murphy lived. Petitioner further claimed during the audit that Pieces of Eight was owned by Michael Van Heemst.

Petitioner initially was unwilling to provide Pieces of Eight's records to respondent's agent, but, after the agent issued a summons, petitioner provided seven boxes of records in April 1991 at Pieces of Eight's place of business, acting pursuant to a purported power of attorney given by Michael Van Heemst. Petitioner, however, did not assist the agent in

reconstructing the taxable income of Pieces of Eight for the years in issue, even though he was its bookkeeper. Ms. Murphy and Mr. Louwers did assist respondent's agent in the reconstruction. After the reconstruction was completed, respondent's agent turned the records of Pieces of Eight over to Ms. Murphy and Mr. Louwers. Ms. Murphy took the records to petitioner's store in Sarasota.

For 1987, based on an analysis of deposits into Pieces of Eight's bank account, checks drawn on that account, and other expenditures made in connection with Pieces of Eight's business, respondent determined that petitioner and Ms. Murphy received gross receipts from Pieces of Eight, incurred cost of goods sold and other deductible expenses, and realized gross income from the business in the following amounts:

| Gross Receipts | Cost of Goods Sold and Other Deductions | Gross Income |
|---|---|---|
| $279,944 | $187,478 | $92,466 |

Respondent also eliminated the $20,000 of wages reported on the return as having been paid by Pieces of Eight, essentially including them in the income of Pieces of Eight. Respondent disallowed $8,816 of the home mortgage interest deduction claimed on the 1987 return.

For 1988 and 1989, respondent determined petitioner's income from Pieces of Eight using a check spread or transcript of checks

drawn on Pieces of Eight's account.  The checks that respondent's agent could not determine were allowable business expenses were considered to represent personal, nondeductible expenses of petitioner and Ms. Murphy, one-half of the amount of which was allocated to petitioner.  Those expenditures were determined to represent net income of Pieces of Eight.

In July 1991, a Florida court awarded Ms. Murphy sole use and possession of Pieces of Eight and restrained petitioner from coming on or about the business (July 1991 order).  During 1992, Ms. Murphy found hidden in petitioner's files an agreement dated September 3, 1990, in which petitioner, as transferee for a company to be incorporated, purported to purchase the assets of Pieces of Eight from Michael Van Heemst.

OPINION

Home Mortgage Interest Deduction

Respondent determined that petitioner and Ms. Murphy were entitled to claim a deduction for home mortgage interest paid in 1987 in the amount of $16,582, rather than the $25,200 claimed on the 1987 return, because the payment of interest in excess of the amount allowed had not been established.

Deductions are strictly a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115

(1933).  The taxpayer's burden includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  A taxpayer is required to maintain sufficient records to substantiate deductions claimed on the tax return.  Sec. 6001.

Petitioner has not attempted to substantiate the portion of the home mortgage interest deduction claimed on his 1987 return that was disallowed by respondent.  We accordingly sustain respondent's determination with respect to the allowable amount of the deduction.

Unreported Income

Respondent used indirect methods of reconstructing petitioner's income for the years in issue.  Deficiencies determined by indirect methods of proof are presumed correct, and the burden is on the taxpayer to show any claimed unfairness or inaccuracy in the Commissioner's calculations.  Webb v. Commissioner, 394 F.2d 366, 372 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Marcello v. Commissioner, 380 F.2d 494, 497 (5th Cir. 1967), affg. in part and revg. and remanding in part T.C. Memo. 1964-302; DiLeo v. Commissioner, 96 T.C. 858, 871, (1991), affd. 959 F.2d 16 (2d Cir. 1992); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970).  The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances.

Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

We note that petitioner complains, inter alia, that respondent did not provide him with copies of Pieces of Eight's books and records. Petitioner further claims that he was prevented from seeking records of Pieces of Eight by the July 1991 order restraining him from coming on or around the business. The record shows, and petitioner admits on brief, that he provided all of the records of Pieces of Eight to respondent's agent during the audit, although he claims that he did so on the instructions of Pieces of Eight. Those records consisted of seven boxes of documents and were supplied to the agent at Pieces of Eight's place of business during April 1991. Although petitioner maintained the books and records of Pieces of Eight, he neither participated in the process of reconstructing its taxable income nor met with respondent's agent at the conference at which the records were reviewed, although he had been notified of it. After the reconstruction was completed, respondent turned the records over to Ms. Murphy and Mr. Louwers. Ms. Murphy took the records to petitioner's store in Sarasota. Although petitioner contends that the records have disappeared, the problem seems to be one of his own making, and we find his complaint that respondent did not provide him with the records of Pieces of Eight to be without merit.

1987

Petitioner and Ms. Murphy reported none of the business activity of Pieces of Eight on the 1987 return.[4]  For that year, respondent determined the deficiency in income tax using the bank deposit method.  The bank deposit method is a well-accepted means of establishing the receipt of income.  Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, supra at 867; Estate of Mason v. Commissioner, 64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

In general, the bank deposit method reconstructs a taxpayer's income by analyzing deposits and withdrawals from all of a taxpayer's bank accounts.  Dodge v. Commissioner, 96 T.C. 172, 181 (1991), affd. in part and revd. in part and remanded 981 F.2d 350 (8th Cir. 1992).  Bank deposits are prima facie evidence of income, and the Commissioner need not show a likely source where the taxpayer has the burden of proof.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656.  When the bank deposit method is employed, however, the Commissioner must take into account any nontaxable source or deductible expense of which the Commissioner

---

[4] The only references to their business activities on the return were the report of (1) purported wage income from Pieces of Eight and (2) income from an S corporation called "Pieces of Eight Dive Ctr, Inc."

has knowledge. DiLeo v. Commissioner, supra at 868. However, the Commissioner is not required to show that all deposits constitute taxable income. Estate of Mason v. Commissioner, supra at 657; Gemma v. Commissioner, 46 T.C. 821, 823 (1966). Consequently, in analyzing a bank deposit case, deposits are considered income when there is no evidence that they represent anything other than income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956). The burden of showing duplications is on the taxpayer. Zarnow v. Commissioner, 48 T.C. 213, 216 (1967).

For 1987, respondent determined that petitioner and Ms. Murphy received gross receipts from Pieces of Eight, incurred cost of goods sold and other deductible expenses, and realized gross income from the business in the following amounts:[5]

| Gross Receipts | Cost of Goods Sold and Other Deductions | Gross Income |
|---|---|---|
| $279,944 | $187,478 | $92,466 |

---

[5] Respondent also eliminated from the taxable income of petitioner and Ms. Murphy the $20,000 of wage income reported on the 1987 return purportedly paid them by Pieces of Eight. Respondent did so on the grounds that petitioner and Ms. Murphy could not receive wage income from the business because they were its owners. In the computations with respect to Pieces of Eight, respondent allowed no deduction for the wages. Consequently, the amount was treated as income derived by petitioner and Ms. Murphy from Pieces of Eight that was reportable on Schedule C of the return.

On brief, petitioner does not question respondent's determination, based on the bank deposit method, of the amount of income earned by Pieces of Eight during 1987. Rather, petitioner claims that he is not taxable on that income because Ms. Murphy alone owned the business. Ms. Murphy, however, testified that Pieces of Eight was a business owned and operated by both petitioner and her during the years in issue. Ms. Murphy testified that petitioner did not wish to have the business in his name because he feared that it would be taken from him to satisfy liens and judgments that were outstanding against him. We found Ms. Murphy a credible witness and accept her testimony. Moreover, on at least one invoice that is in the record, petitioner represented himself as an owner of Pieces of Eight.

Petitioner's conflicting stories concerning the ownership of Pieces of Eight also render his claims implausible. Prior to and at the beginning of the audit, petitioner claimed that Kathleen Murphy, a woman he had never seen, had owned Pieces of Eight. Kathleen Murphy is Ms. Murphy's sister and had nothing to do with the business. Petitioner also told respondent's agent that Kathleen Murphy was an alias used by Ms. Murphy. Petitioner further claimed that the business was subsequently acquired from Kathleen Murphy by petitioner's son, Michael Van Heemst, who was then a high school student, at the end of 1987. Petitioner, however, admitted that none of the purchase price called for in

the asset purchase agreement was paid and offered implausible explanations for the failure. At trial, however, petitioner claimed that Kathleen Murphy never sold Pieces of Eight to Michael Van Heemst. The sale transaction seems to have been fabricated by petitioner. During the course of the audit, which the record indicates began during or about October 1990, petitioner claimed that Michael Van Heemst was the current owner of Pieces of Eight. At trial, however, petitioner testified that Ms. Murphy was the owner of Pieces of Eight at the time he told the agent that it was owned by Michael Van Heemst. Moreover, the record contains a sale agreement dated September 3, 1990, pursuant to which petitioner, as transferee for a company to be incorporated, purports to purchase the assets of Pieces of Eight from Michael Van Heemst. During 1992, Ms. Murphy found the agreement hidden in petitioner's files and apparently provided it to respondent.

At trial, petitioner claimed that Ms. Murphy and Kathleen Murphy initially agreed that Kathleen Murphy would be the owner of Pieces of Eight but later decided Ms. Murphy would own the business. Petitioner also claimed at trial that Ms. Murphy used the name Kathleen Murphy as an alias and always owned the business. Petitioner makes the same claim on brief, although elsewhere on brief seems to admit that Ms. Murphy and Kathleen Murphy were different persons. In one portion of his brief,

petitioner claims that "Kathleen Murphy, petitioners ex wife" executed the asset purchase agreement. In another portion of his brief, he claims that the asset purchase agreement was signed either by Ms. Murphy or her sister. Petitioner's stories concerning the ownership of Pieces of Eight are so conflicting as to be unworthy of belief,[6] and we reject them. Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. and remanding 99 T.C. 370 (1992) and T.C. Memo. 1992-616. On the basis of the record in the instant case, we conclude that petitioner was a coowner of Pieces of Eight. We accordingly sustain respondent's determination of the deficiency in income tax for 1987.[7]

---

[6]

This brings to mind a letter from Thomas Jefferson to Peter Carr, dated Aug. 19, 1785, which notes that once a lie is told, it is much easier to do it again and again "till at length it becomes habitual."

[7]

Moreover, even if Ms. Murphy had been the sole owner of Pieces of Eight, petitioner would still be liable for the deficiency determined by respondent resulting from the failure to report the income of Pieces of Eight for 1987. As an unincorporated business, the income of Pieces of Eight was reportable on the joint return petitioner and Ms. Murphy filed for 1987. Liability for the tax on the aggregate income of a husband and wife is joint and several, sec. 6013(d)(3), and, therefore, petitioner would be liable for the tax attributable to the income of Pieces of Eight whether or not he was one of its owners, Davenport v. Commissioner, 48 T.C. 921, 926 (1967); sec. 1.6013-4(b), Income Tax Regs.

1988 and 1989

Petitioner filed no returns for 1988 and 1989. For those years, respondent determined that petitioner received net income from Pieces of Eight in the amounts of $37,891 and $58,577, respectively, based on a check spread, or transcript of checks drawn on Pieces of Eight's bank account. The checks that respondent could not determine were allowable business expenses were considered to represent personal nondeductible expenses of petitioner and Ms. Murphy, one half of the amount of which was allocated to petitioner, and represented net income of Pieces of Eight. Ms. Murphy testified that petitioner would issue to her checks drawn on Pieces of Eight's account that were used to pay their household expenses. Respondent's agent claimed at trial that she had utilized a bank deposit method of reconstructing the income of Pieces of Eight, but the work papers in the record concerning 1988 and 1989 do not contain any analysis of Pieces of Eight's bank deposits for those years. Furthermore, the description of the method by which the deficiencies were determined set forth in the stipulations of the parties and respondent's brief makes clear that the determination was based on expenditures from, rather than deposits into, the Pieces of Eight bank account. On brief, respondent does not claim that the deficiencies for 1988 and 1989 were determined on the basis of the bank deposit method. Indeed, respondent does not

characterize the method used to determine the deficiencies, simply stating that certain expenditures from the Pieces of Eight account were determined to be nondeductible and were presumed to represent income to petitioner. Although we may infer that deposits in amounts equal to the amount of the checks were made into the Pieces of Eight account, we shall treat respondent as having utilized the cash expenditures method of reconstructing income for those years.

The cash expenditures method is a variant of the net worth method that is designed to reconstruct the income of a taxpayer who consumes his income during the year and does not invest it. Petzoldt v. Commissioner, 92 T.C. 661, 694 (1989). The method is well accepted by the courts. United States v. Johnson, 319 U.S. 503, 517-518 (1943); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). It is based on the assumption that the amount by which a taxpayer's expenditures during a taxable year exceed his reported income has taxable origins unless the taxpayer can show that the expenditures were made from some nontaxable source. DeVenney v. Commissioner, supra at 930-931. Income is reconstructed pursuant to the cash expenditures method in the following manner:

> after taking into account the amount of resources that
> a taxpayer had on hand at the beginning of a period,
> the income received by the taxpayer for the same period
> is compared with his expenditures that are not
> attributable to his resources on hand or non-taxable
> receipts during the period. A substantial excess of
> expenditures over the combination of reported income,

non-taxable receipts, and cash on hand may establish the existence of unreported income. [United States v. Citron, 783 F.2d 307, 310 (2d Cir. 1986).]

Formal opening net worth statements are not required provided the evidence "'shows the extent of any contribution which beginning resources or a diminution of resources over time could have made to expenditures.'" Petzoldt v. Commissioner, supra at 694-695 (quoting Taglianetti v. United States, 398 F.2d 558, 565 (1st Cir. 1968), affd. 394 U.S. 316 (1969)). To carry his burden of proof, petitioner must show that the expenditures in question were made from some nontaxable source of funds, such as loans, gifts, or assets on hand at the beginning of the period. DeVenney v. Commissioner, supra at 931. Alternatively, petitioner may show that the expenditures were allowable business expenses, in which case they would offset the income presumed to have been received by petitioner. Curry v. Commissioner, T.C. Memo. 1991-102.

Petitioner argues that the expenditures identified by respondent were business expenses of Pieces of Eight or were loans or repayments made by it to himself or other related businesses and that any loans Pieces of Eight made were repaid. Petitioner relies on his testimony and charge account statements to establish his claim with respect to the business expenses. However, we found petitioner's testimony vague and replete with unsupported conclusions, and, based on our observation of his

demeanor at trial, we do not consider petitioner's testimony to be credible. Moreover, the records relied on by petitioner are inconclusive and do not establish that the amounts charged and paid by Pieces of Eight were expenditures of a business, rather than of a personal, nature. Indeed, based on the information in the charge account statements, many of the charges listed appear indistinguishable from personal expenses. Petitioner's claim that other expenditures were loans that were subsequently repaid, even if we were to accept it, does not call into question respondent's determination. In essence, respondent determined, on the basis of the expenditures by Pieces of Eight, that Pieces of Eight received taxable income that enabled it to make those expenditures. Petitioner did attempt to show a nontaxable source for the expenditures, claiming money obtained from refinancing a mortgage on his home provided funds that were advanced to Pieces of Eight in 1987, and that additional funds were advanced through the end of 1990. Petitioner's testimony on the matter, however, was vague, confusing, and contradictory, and we do not accept it. Moreover, petitioner did not have a large amount of assets after the bankruptcy of Cape Town, which concluded in 1988. We also conclude that petitioner was an owner of Pieces of Eight during 1988 and 1989. We accordingly hold that petitioner has failed to carry his burden of demonstrating error in respondent's

determination that he received unreported income with respect to Pieces of Eight during those years.

Section 1401 Self-Employment Tax

Respondent determined that petitioner is liable for self-employment tax on the following amounts of unreported income from Pieces of Eight for the years in issue:

| Year | Amount |
|------|--------|
| 1987 | $92,446 |
| 1988 | 37,891 |
| 1989 | 58,577 |

Section 1401 imposes a tax on the self-employment income of every individual. The term "self-employment income" generally is defined as an individual's net earnings from self-employment during any taxable year that do not exceed the contribution and benefit base provided by section 230 of the Social Security Act, 42 U.S.C. sec. 430 (1988), for that year. Sec. 1402(b). "Net earnings from self-employment" generally are defined as the gross income from any trade or business carried on by the individual, less allowable deductions attributable to the trade or business. Sec. 1402(a). Petitioner bears the burden of establishing error in respondent's determination that he is liable for self-employment tax on the net earnings of Pieces of Eight. Rule 142(a).

We have rejected above petitioner's claim that Ms. Murphy was sole owner of the business, and we have sustained

respondent's determinations with respect to the unreported income received by petitioner with respect to Pieces of Eight. We accordingly sustain respondent's determinations of petitioner's liability for self-employment tax.

Sections 6653(b) and 6651(f) Additions to Tax

Respondent determined that petitioner is liable for the addition to tax for fraud provided by section 6653(b)(1)(A) and (B) for 1987 and section 6653(b)(1) for 1988. Respondent also determined that petitioner is liable for the addition to tax for fraudulent failure to file a return provided by section 6651(f) for 1989.[8] In deciding whether a failure to file is fraudulent, we consider the same elements as are considered in imposing the addition to tax for fraud provided by former section 6653(b) and present section 6663. Clayton v. Commissioner, 102 T.C. at 653. Accordingly, we have consolidated our discussion of respondent's fraud determinations.

---

[8] Sec. 6664(b) provides that, for tax returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989, neither the negligence penalty provided by sec. 6662 nor the fraud penalty provided by sec. 6663(a) applies where a tax return has not been filed. Clayton v. Commissioner, 102 T.C. 632, 652 (1994). Sec. 6651(f), however, provides that, where a failure to file a return is fraudulent, the addition to tax imposed by section 6651(a) is increased to 15 percent of the amount required to be shown as tax for each month the failure continues, up to a maximum of 75 percent of the amount.

The addition to tax for fraud is a civil sanction provided primarily for the protection of the revenue and to reimburse the Commissioner for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990). The Commissioner bears the burden of demonstrating fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977).

In order to carry the burden of proof on the issue of fraud, respondent must show, for each year in issue, that (1) an underpayment of tax exists and (2) some portion of the underpayment is due to fraud. Petzoldt v. Commissioner, 92 T.C. at 699.

- 25 -

Underpayment

With respect to the first prong of the test, respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud.  Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274.  Respondent may not, however, simply rely upon petitioner's failure to show error in the determinations of the deficiencies.  DiLeo v. Commissioner, 96 T.C. at 873; Petzoldt v. Commissioner, supra at 700.

1987

As noted above, respondent reconstructed petitioner's income for 1987 using the bank deposit method, and we are satisfied that respondent's bank deposit analysis establishes that petitioner had substantial unreported income during that year.  In contrast to the net worth and cash expenditures methods, it is not necessary to establish a taxpayer's opening net worth in order to show the receipt of taxable income by means of the bank deposit method.  United States v. Conaway, 11 F.3d 40, 43 (5th Cir. 1993).  "Such proof is not required because the evidence of bank deposits suffices to raise the inference that the taxpayer's income came from a taxable source."  Id.  Where the Commissioner has the burden of proof, the Commissioner must, however,

establish either a likely source for the unreported income or disprove nontaxable sources alleged by the taxpayer.  DiLeo v. Commissioner, supra at 873-874; Parks v. Commissioner, 94 T.C. 654, 661 (1990).  Proof of a likely source necessarily negates possible nontaxable sources.  United States v. Abodeely, 801 F.2d 1020, 1025 (8th Cir. 1986).

Respondent's bank deposit analysis for 1987 was carefully performed.  Respondent's agent analyzed the deposits made in Pieces of Eight's bank account for 1987, excluding the deposits that could be identified as transfers from other accounts and considering claims of loans made to the business, which were rejected because of a lack of substantiation.  Respondent's agent also analyzed the checks drawn on the account as well as other expenditures, and allowed as cost of goods sold or deductible expenses those payments that were shown to be attributable to the business of Pieces of Eight.  Ms. Murphy and Mr. Louwers assisted the agent in establishing the allowable amount of those items. The difference between the net deposits and the total cost of goods sold and expenses allowed was determined to be the taxable income of Pieces of Eight.  Respondent has shown a likely source for the unreported income in issue; to wit, Pieces of Eight, of which petitioner was coowner.  Although respondent, having established a likely source of petitioner's unreported income, need not negate nontaxable sources of that income, DiLeo v.

Commissioner, supra at 873-874, the record shows that respondent investigated petitioner's claims of nontaxable sources and showed them to be implausible and/or not supported by objective evidence in the record, United States v. Conaway, supra at 44; Parks v. Commissioner, supra at 661. Respondent has thus established an underpayment for 1987.

### 1988 and 1989

In contrast to the approach used for 1987, respondent determined that petitioner underpaid his 1988 and 1989 taxes, not on the basis of deposits into Pieces of Eight's bank account, but on the basis of expenditures from the account. Respondent does not argue on brief that the method used to determine the underpayments of tax for 1988 and 1989 was the bank deposit method or any variation thereof. Respondent's agent examined the checks drawn on the account of Pieces of Eight and treated as personal or nondeductible the expenditures that could not be associated with that business. Respondent did not place in evidence any analysis of bank deposits for Pieces of Eight during those years, although respondent's agent claimed to have gone through its bank deposits. Respondent has offered no explanation why the determination of the underpayment of tax apparently was based on only an analysis of expenditures from Pieces of Eight's bank account, and not on deposits into the account.[9]

---

[9]

For instance, respondent does not claim that records of
(continued...)

Consequently, we do not consider it appropriate to review respondent's method using the standards developed for the bank deposit method.[10]

Instead, we shall consider whether respondent has carried the burden of proving that underpayments of tax occurred for those years using the standards customarily applied to the cash expenditures method.  Evidence of expenditures alone is not sufficient to establish the existence of unreported income for a taxable year where the Commissioner has the burden of proof; rather, there must be sufficient proof to support an inference that the expenditures are made from currently taxable sources. Marcus v. United States, 422 F.2d 752, 755 (5th Cir. 1970); United States v. Nunan, 236 F.2d 576, 582 (2d Cir. 1956); Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9.

As noted above, while the Commissioner need not establish an opening net worth in order to apply the bank deposit method, the Commissioner must, as a prerequisite to establishing that expenditures during a taxable year are made from currently taxable income, show the "'extent of any contribution which

---

[9]  (...continued)
deposits into the account were not available.

[10]

We note that, even if we were to apply those standards, we would find, essentially for the reasons set forth below, that respondent had not carried the burden of proving an underpayment of tax for 1988 or 1989.

beginning resources or a diminution of resources over time could have made to expenditures.'"  Petzoldt v. Commissioner, 92 T.C. at 694-695 (quoting Taglianetti v. United States, 398 F.2d at 565).

> Formal net worth statements are not required as long as sources of available funds are identified and quantified.  The relevant issue in a cash expenditures case is whether any expenditures in excess of reported income can be attributed to assets available at the beginning of the relevant period or to nontaxable receipts, such as loans, gifts, or inheritances.  [Id. at 695; citations omitted.[11]]

Establishment of a taxpayer's beginning resources is essential and is recognized to be the most difficult component of the Commissioner's proof where the expenditures method is used. United States v. Citron, 783 F.2d at 316.  Where underpayments of tax are to be shown over successive years, the Commissioner may establish the opening available funds for the first year and show the net amount of taxable and nontaxable receipts less disbursements for that year in order to establish the opening available funds for the successive year, and so on.   United States v. Caswell, 825 F.2d 1228, 1232 (8th Cir. 1987); United States v. Marshall, 557 F.2d 527, 530 (5th Cir. 1977).

---

[11]

We held in Petzoldt v. Commissioner, 92 T.C. 661, 694-696 (1989), that the Commissioner's failure to determine a taxpayer's opening and closing net worth did not prevent the Commissioner from showing an underpayment of tax on the basis of the cash expenditures method where the Commissioner introduced sufficient evidence for us to conclude that the taxpayer did not have sufficient resources at the beginning of the relevant period to provide a nontaxable source for the expenditures in question.

Additionally, the Commissioner must show either a likely source for the unreported income or negate nontaxable sources. Petzoldt v. Commissioner, supra at 695-697. If all nontaxable sources are negated, respondent need not show a likely source. United States v. Massei, 355 U.S. 595 (1958). "One or the other will do." Petzoldt v. Commissioner, supra at 696. The Commissioner must also follow up leads to sources of nontaxable income furnished by the taxpayer where they are reasonably susceptible of being checked but need not negate every possible nontaxable source where no leads are forthcoming. Holland v. United States, 348 U.S. 121, 135-136, 138 (1954); United States v. Penosi, 452 F.2d 217, 220 (5th Cir. 1971).

Because respondent's determinations were based upon transactions occurring with respect to Pieces of Eight's bank account, we need only consider circumstances relating to that account in order to decide whether respondent has carried the burden of proving an underpayment for each of 1988 and 1989. Respondent has shown that petitioner was coowner of Pieces of Eight. Respondent, however, has introduced evidence only of expenditures made by checks drawn on Pieces of Eight's bank account. Respondent has not attempted to show the opening balance of that account for each of 1988 and 1989,[12] which would

---

[12]

Furthermore, respondent's analysis of Pieces of Eight's account for 1987, although sufficient to demonstrate the existence of an underpayment of tax for that year, does not

(continued...)

establish the extent to which expenditures during those years could have been accounted for by cash on hand at the beginning of each of those years.  Respondent has thus failed to identify and quantify sources of available funds, which is required to establish an underpayment of tax pursuant to the cash expenditures method.  Petzoldt v. Commissioner, supra at 695.  In fact, the total amount of unreported income determined for 1988 and 1989, namely, $96,468, is only slightly larger than the amount of unreported income determined for 1987 to have been deposited in that account; namely, $92,466.[13]  Therefore, the extent to which resources on hand at the beginning of 1988 and 1989 could have contributed to the expenditures during those years is unclear.  Had respondent placed in evidence the statements for the account or other records showing the activity for the account for those years, we might have been able to infer that the expenditures in issue were made from currently taxable income.

Respondent's approach to establishing that underpayments of tax occurred for 1988 and 1989 is summed up by the following

---

[12]  (...continued)
afford a reliable basis for an inference as to the balance of the account at the end of that year.

[13]

Although we do not conclude that this amount necessarily was on deposit in Pieces of Eight's account at the close of 1987, the unreported income indicates the availability of resources that could have funded at least a portion of the expenditures in question and that respondent failed to take into account.

statement from respondent's brief:  "It is presumed that if petitioner could have used * * * funds [of Pieces of Eight] for nondeductible personal expenditures then at least that amount of income must have been earned."  Such a presumption, however, is insufficient to carry respondent's burden of proof.[14]  The fact that expenditures were made, without evidence supporting the inference that they were made from currently taxable income, rather than from resources on hand at the beginning of the period in question, is not sufficient to establish, by clear and convincing evidence, that underpayments of tax occurred in each of 1988 and 1989.  We therefore do not sustain respondent's determination with respect to the addition to tax for fraud for 1988 and the addition to tax for fraudulent failure to file for 1989.

Fraudulent Intent

Because we have found that respondent has carried the burden of proving that an underpayment of tax occurred only with respect to 1987, we shall consider the second prong of the fraud test

---

[14]

Elsewhere on brief, respondent argues that "petitioner cannot reasonably dispute that the amounts of income he failed to report in each of the three consecutive years before the Court was substantial" to support the determination that petitioner is liable for the addition to tax for fraud.  If respondent means to suggest that petitioner should be held liable for the addition to tax for fraud because he cannot show error in respondent's determinations, we must point out that respondent bears the burden of proof on this issue, and a finding of fraud cannot be based upon petitioner's failure to show error in respondent's determinations.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

only with respect to that year. Respondent must show that petitioner intended to evade taxes known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Korecky v. Commissioner, 781 F.2d at 1568; Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d at 377; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). However, fraud need not be established by direct evidence, which is rarely available, but may be proved by surveying the taxpayer's entire course of conduct and drawing reasonable inferences therefrom. Spies v. United States, 317 U.S. 492, 499 (1943); Korecky v. Commissioner, supra at 1568; Rowlee v. Commissioner, supra at 1123; Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Although fraud may not be found under "circumstances which at the most create only suspicion", Petzoldt v. Commissioner, 92 T.C. at 700, the intent to defraud may be inferred from any conduct the likely effect of which would be to conceal, mislead, or otherwise prevent the collection of taxes believed to be owing, Spies v. United States, supra at 499.

Courts have relied on a number of indicia or badges of fraud in deciding whether to sustain the Commissioner's determinations with respect to the additions to tax for fraud. Although no

single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93.

Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). These "badges of fraud" are nonexclusive. Miller v. Commissioner, 94 T.C. at 334. The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. Spies v. United States, supra at 497; United States v. Murdock, 290 U.S. 389, 395 (1933), overruled on another issue Murphy v. Waterfront Commn., 378 U.S. 52 (1964); Plunkett v. Commissioner, 465 F.2d at 303.

Considering the record as a whole, we conclude that there are sufficient badges of fraud to carry respondent's burden of

proof.  During 1987, petitioner was coowner of and received income from Pieces of Eight, yet he reported that he received only $10,000 in wage income from that business on the 1987 return, reporting none of the income and expenses attributable to that business on the return.[15]  Petitioner maintained the books and records of Pieces of Eight and was therefore aware of its financial position.  The Form W-2 filed with that return also falsely represented that Kathleen Murphy was the owner of Pieces of Eight.  As noted above, respondent reconstructed the taxable income of Pieces of Eight for 1987 using the bank deposit method.  Although unexplained bank deposits are not in themselves clear and convincing evidence of fraud, York v. Commissioner, 24 T.C. 742, 743 (1955), a large unexplained discrepancy between petitioner's actual income and his reported income constitutes evidence of fraud, Stone v. Commissioner, 56 T.C. 213, 224 (1971).

Furthermore, petitioner misled the accountant who prepared the financial statements for Pieces of Eight and the 1987 income tax return concerning its ownership.  Although he and Ms. Murphy owned Pieces of Eight during the years in issue, he informed the accountant that Kathleen Murphy was its owner in 1987.  Petitioner continued to mislead the accountant in subsequent years, telling the accountant that Michael Van Heemst,

_____

[15]

The record does not disclose that the income of Pieces of Eight for 1987 was reported on any return.

petitioner's son, was its owner in 1988 and 1989.[16] Petitioner showed the accountant the asset purchase agreement in which Kathleen Murphy purportedly sold Pieces of Eight to Michael Van Heemst. On the basis of that information, the accountant prepared 1988 and 1989 returns for Michael Van Heemst that reflected the income of Pieces of Eight. The accountant subsequently learned that Pieces of Eight was owned by petitioner and Ms. Murphy. A failure to be forthright with one's return preparer is an indication of fraud, Korecky v. Commissioner, 781 F.2d at 1568, as is the use of an alias, Lipsitz v. Commissioner, 21 T.C. 917, 937 (1954), affd. 220 F.2d 871 (4th Cir. 1955).

Petitioner also told respondent's agent that Kathleen Murphy owned Pieces of Eight from 1986 until the end of 1987. At first, he claimed not to know her but later claimed that the name was an alias used by Ms. Murphy. During the initial stage of the audit, petitioner also told respondent's agent that (1) he was merely an employee of Pieces of Eight, (2) the agent was not to ask him any questions about Pieces of Eight, and (3) the agent could not visit its store. Petitioner also initially was unwilling to provide Pieces of Eight's records to respondent's agent, but, after the agent issued a summons, petitioner provided records,

---

[16] Although some of petitioner's conduct does not relate directly to 1987, we may consider evidence of prior and subsequent similar acts reasonably close to the years in issue in deciding whether petitioner is liable for the addition to tax for fraud. United States v. Johnson, 386 F.2d 630, 631 (3d Cir. 1967); Gruber v. Commissioner, T.C. Memo. 1995-230.

acting pursuant to a purported power of attorney given by Michael Van Heemst.  During this time, however, it appears that there was in existence a sale agreement, dated September 3, 1990, pursuant to which petitioner, as transferee for a company to be incorporated, purported to purchase the assets of Pieces of Eight from Michael Van Heemst and which petitioner kept hidden in his files.  Petitioner, moreover, did not assist the agent in reconstructing the taxable income of Pieces of Eight for the years in issue, even though he was its bookkeeper.  Making false and inconsistent statements to the Commissioner's agents during the course of their examinations is a badge of fraud, as is failure to cooperate with the agents.  Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980).

Furthermore, we consider petitioner's testimony at trial, which we found to be at times vague, evasive, inconsistent, and incredible.  "Although mere refusal to believe the taxpayer's testimony does not discharge the Commissioner's burden, * * * the lack of credibility of the taxpayer's testimony, the inconsistencies in his testimony, and his evasiveness on the stand are heavily weighted factors in considering the fraud issue."  Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25.

Petitioner relies on a memorandum from respondent's Criminal Investigation Division declining to accept referral of petitioner's case for criminal prosecution.  That petitioner's

case was not accepted for criminal prosecution, in which the Government would be required to bear a heavier burden of proof than in a civil case, see Moore v. United States, 360 F.2d 353, 355 (4th Cir. 1965), does not suggest that petitioner is not liable for the civil fraud addition, and the memorandum states that none of the considerations leading to the declination of the referral would preclude imposition of that addition to tax. That the Government declined to pursue criminal charges against petitioner has no bearing on the question of petitioner's liability for the civil fraud addition, and even an acquittal of criminal tax evasion charges would in no way affect his liability for those additions. Otsuki v. Commissioner, 53 T.C. at 112.

Petitioner also claims that he relied on the representations of Ms. Murphy that taxes were paid through 1991. While a showing of good faith on the part of a taxpayer can preclude the existence of fraud, Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1238 n.72 (5th Cir. 1978); Niedringhaus v. Commissioner, 99 T.C. 202, 220 (1992), the evidence petitioner relies on does not indicate good faith on his part. In one portion of his brief, petitioner points to a provision of what appears to be a proposed divorce settlement between petitioner and Ms. Murphy dated October 18, 1991, which states: "John Van Heemst agrees that Colleen Murphy has paid to date several monies for him both personal and business including paying the IRS up to 1991". Elsewhere on brief, however, petitioner claims that the

statement was a lie on the part of Ms. Murphy, that the agreement was an attempt to "blackmail" him, and that he did not sign the agreement.  At trial, Ms. Murphy denied that the statement indicated that she had paid petitioner's taxes.  Under the circumstances, we do not think that petitioner relied on the statement.  Petitioner also claims on brief that Ms. Murphy verbally advised him that taxes were paid up to 1991, but he points to no evidence in the record to support his assertion.  Statements in briefs, however, are not evidence, Rule 143(b), and we do not accept petitioner's assertion without evidence.  We do not accept that there was good faith on petitioner's part with respect to the underpayment of taxes for the years in issue.  Moreover, petitioner's belief in 1991 that taxes were paid would not purge any prior fraudulent intent on his part with respect to the years in issue.  Cf. <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 394 (1984).

Section 6651(a) Addition to Tax

Respondent determined that, in the event petitioner were not held liable for the additions to tax for fraud for 1988 and for fraudulent failure to file a return for 1989,[17] he was liable for the addition to tax for failure to file timely provided by

---

[17] Because we have held above that petitioner is liable for the addition to tax for fraud for 1987, we need not consider respondent's alternative determination that petitioner is liable for the addition to tax for failure to file timely for that year. Sec. 6653(a)(2).

section 6651(a) for each of those years. The addition to tax for failure to file timely does not apply where the taxpayer demonstrates that the failure to file was due to reasonable cause and not willful neglect. The regulations provide that reasonable cause exists where the taxpayer was unable to file timely despite the exercise of ordinary business care and prudence. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Willful neglect" has been defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). The question whether a failure to file is due to reasonable cause and not willful neglect is one of fact, on which petitioner bears the burden of proof. Rule 142(a); Lee v. Commissioner, 227 F.2d 181, 184 (5th Cir. 1955), affg. a Memorandum Opinion of this Court dated July 31, 1953.

Petitioner failed to file returns for 1988 and 1989. Although petitioner makes no argument directed specifically to his liability for the addition to tax provided by section 6651(a), petitioner testified that he believed that he was required to file returns every year, whether he owed tax or not. While petitioner claims that he relied on the statement of Ms. Murphy that taxes were paid through 1991, which was apparently made at that time, we have rejected his claim. Moreover, the relevant question is not whether petitioner believed that tax was owed, but whether he knew that a return should be filed. Jackson v. Commissioner, 864 F.2d 1521, 1527 (10th Cir. 1989), affg. 86

T.C. 492 (1986); Olsen v. Commissioner, T.C. Memo. 1993-432;
Estate of Cox v. United States, 637 F. Supp. 1112, 1115 (S.D.
Fla. 1986). Based on the entire record, we hold that petitioner
has failed to carry his burden of proving that his failure to
file returns for 1988 and 1989 was due to reasonable cause and
not willful neglect.

Section 6653(a)(1) Addition to Tax

Respondent determined that, in the event petitioner were not
held liable for the addition to tax for fraud for 1988, he was
liable for the addition to tax for negligence provided by section
6653(a)(1).[18] The addition to tax is equal to 5 percent of the
underpayment if any part is attributable to negligence.

Negligence is defined as a lack of due care or failure to do
what a reasonable and ordinarily prudent person would do under
the circumstances. Neely v. Commissioner, 85 T.C. 934, 937
(1985). The failure to file timely a tax return is prima facie
evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349
(1989), affd. 898 F.2d 50 (5th Cir. 1990). Petitioner bears the
burden of proving that he was not negligent. Bixby v.
Commissioner, 58 T.C. 757, 791-792 (1972).

---

[18]

Because we have held above that petitioner is liable for the
addition to tax for fraud for 1987, we need not consider
respondent's alternative determination that petitioner is liable
for the addition to tax for negligence for that year. Sec.
6653(a)(2). No accuracy-related penalty for negligence pursuant
to sec. 6662 was determined in the alternative for 1989 because
no return was filed for that year. See supra note 8.

Petitioner has made no argument specifically directed to respondent's determination of negligence and has failed to introduce evidence sufficient to overcome the prima facie evidence of negligence furnished by his failure to file a return for 1988. As noted above, we have rejected petitioner's claim that he relied on any statement by Ms. Murphy that his taxes were paid through 1991. Based on our consideration of the entire record, we sustain respondent's determination with respect to the addition to tax for negligence for 1988.

Section 6661(a) Addition to Tax

Respondent determined that, for 1987, petitioner was liable for the addition to tax for a substantial understatement of income tax provided by section 6661(a). The addition to tax is equal to 25 percent of the amount of any underpayment of tax attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). The amount of the understatement is equal to the amount of tax required to be shown on the return less the amount of tax shown on the return. Sec. 6661(b)(2)(A). For individuals, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The amount of the understatement is reduced by the portion that is attributable to an item for which there is or was substantial authority for the position taken on the return or which was adequately disclosed on the return. Sec. 6661(b)(2)(B).

Petitioner bears the burden of proving error in respondent's determination pursuant to section 6661(a). Weis v. Commissioner, 94 T.C. 473, 490 (1990). Petitioner presented no argument concerning his liability for the addition to tax provided by section 6661(a). The understatement of petitioner's income tax for 1987 was substantial. On the record before us, we hold that petitioner failed to carry his burden of proof with respect to respondent's determination pursuant to section 6661(a).

Section 6654(a) Addition to Tax

Respondent also determined that, for 1988 and 1989, petitioner is liable for the addition to tax provided by section 6654(a) for failure to pay estimated income tax. Imposition of that addition to tax is mandatory where prepayments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required by the statute, unless petitioner shows that one of the several statutorily provided exceptions applies. Sec. 6654(a); Niedringhaus v. Commissioner, 99 T.C. at 222; Grosshandler v. Commissioner, 75 T.C. at 20-21. For 1988 and 1989, petitioner filed no returns and made no estimated tax payments. Petitioner has not shown that any of the statutorily provided exceptions apply to him. We therefore sustain respondent's determination of petitioner's liability for the addition to tax for failure to pay estimated income tax for those years.

We have considered all of petitioner's other arguments and find them to be without merit.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.