2006 UT 62

**D.J. INVESTMENT GROUP, L.L.C., a Utah limited liability company, Plaintiff and Respondent,**

v.

**DAE/WESTBROOK, L.L.C., a Delaware limited liability company; Draper City, a municipal corporation; John Does 1 through 15, Defendants and Petitioners.**

No. 20050495.

Supreme Court of Utah.

Oct. 20, 2006.

Denver C. Snuffer, Jr., Sandy, for plaintiff.

Richard W. Casey, John H. Bogart, Evelyn J. Furse, Nicole A. Skolout, Salt Lake City, for defendants.

1. Utah R. Prof'l Conduct 3.7(a).

DURRANT, Justice:

## INTRODUCTION

¶ 1 Rule 3.7(a) of the Utah Rules of Professional Conduct generally prohibits a lawyer from "act[ing] as [an] advocate at a trial in which the lawyer is likely to be a necessary witness," but provides an exception where disqualification of the lawyer would "work substantial hardship on the client."[1] In this interlocutory appeal, we granted certiorari on a single question incorporating two issues: (1) whether the substantial hardship exception requires courts to balance the interests of the client with the interests of the opposing party and the tribunal, and (2) whether the substantial hardship exception was properly applied in this case.

¶ 2 Defendant DAE/Westbrook, L.L.C., now known as SunCrest, L.L.C. ("SunCrest") moved under rule 3.7(a) to disqualify lawyer Denver C. Snuffer from representing plaintiff D.J. Investment Group, L.L.C. ("D.J.") at trial, alleging that Snuffer's actions have made him a necessary witness in this case. The district court found that the disqualification of Snuffer would cause substantial hardship to D.J. and denied the motion. SunCrest filed an interlocutory appeal, and the court of appeals affirmed. SunCrest argues that the court of appeals applied the wrong legal test for substantial hardship and that it erred in affirming because the district court did not conduct an appropriate balancing of interests in determining that Snuffer's disqualification would cause substantial hardship to D.J. We conclude that the substantial hardship exception requires a balancing of interests consistent with the advisory committee's comment to rule 3.7, that an appropriate balancing was conducted, and that the court of appeals correctly held that the district court did not abuse its discretion when it found that the substantial hardship exception applied to the facts of this case. We therefore affirm.

## BACKGROUND

¶ 3 Although the present lawsuit between neighboring landowners D.J. and SunCrest has a complex factual history, we discuss only those facts necessary to consider Sun-Crest's appeal from the denial of its motion to disqualify opposing counsel Denver Snuffer. SunCrest seeks to disqualify Snuffer and his firm, Nelson, Snuffer, Dahle & Poulsen, P.C., from representing D.J. as an advocate at trial based on Snuffer's involvement in a November 16, 2000 settlement agreement ("the Agreement") between SunCrest and D.J. that is now a subject of dispute in the present case.

¶ 4 The Agreement was intended to resolve an October 2000 lawsuit brought by D.J. against SunCrest for an alleged trespass. In provision 14 of the Agreement, SunCrest promised to allow D.J. to use a "Southerly Roadway" that would be built across property belonging to third party Micron Technology, Inc. ("Micron"). In return, D.J. agreed to dismiss its prior lawsuit and to allow SunCrest to use an access road that SunCrest had built over D.J.'s property. Snuffer acted as D.J.'s lawyer at all times during these events and has continued to represent D.J. through the present proceedings. The extent of his involvement in negotiating the November 2000 Agreement is disputed.

¶ 5 A short time after the parties signed the Agreement, the dispute between the parties was rekindled. According to the district court, "[d]espite [SunCrest's] representations that it had secured the necessary easements to construct the Southerly Roadway, the rights to these easements may not have been obtained and [SunCrest] is now preparing to build the Southerly Highway along a different route that does not provide D.J. with [its desired] access to State Road 92." On May 7, 2001, D.J. filed the present lawsuit. It seeks to rescind the Agreement and brings multiple claims against SunCrest.

¶ 6 On February 19, 2004, over two and one-half years after D.J. filed its complaint, SunCrest moved pursuant to rule 3.7 of the Utah Rules of Professional Conduct to disqualify Snuffer from representing D.J. at trial, arguing that Snuffer is a necessary witness in the case. SunCrest alleges that Snuffer played an important role in drafting provision 14 of the Agreement regarding the Southerly Highway and that his testimony regarding the intent of the parties will be crucial. In turn, D.J. argues that Snuffer was not present when provision 14 was drafted and disputes Snuffer's value as a witness. The district court determined that Snuffer was involved in many of the negotiation sessions regarding the November 2000 Settlement Agreement and that he advised David Mast, the manager and primary member of D.J., on matters related to the negotiations, but the court did not resolve the dispute of fact regarding Snuffer's involvement in negotiating and drafting provision 14.

¶ 7 Upon hearing oral arguments on Sun-Crest's motion to disqualify Snuffer, the district court issued a written ruling declining to disqualify Snuffer and his firm from representing D.J. at trial. It reasoned that it need not determine whether Snuffer was likely to be a necessary witness because his disqualification would cause substantial hardship to D.J. and thus fell within the exception provided by rule 3.7(a)(3). After noting that it had weighed the interests of the two parties in accordance with the comments to rule 3.7, the district court stated,

> [T]he parties have conducted a significant amount of discovery in connection with this litigation. Most, if not all, of the key witnesses have been deposed and written discovery has been sent out and answered by both parties. All things considered, the parties have engaged in a substantial amount of work. Indeed, the Court file now fills seven exceptionally thick folders and addresses some very complex legal issues. The Clerk of the Court has just opened the eighth file. Under these circumstances, the Court doubts that another attorney could be brought up to speed in this matter and recognizes that such an effort would require D.J. to expend an exorbitant amount of time and money.

The district court continued, "Furthermore, this court believes that [SunCrest] could have significantly reduced the costs of bringing new counsel up to speed if [SunCrest] had filed its Motion to Disqualify Denver

Snuffer in a more timely fashion." It then devoted four paragraphs to the timeliness of SunCrest's motion to disqualify. Ultimately, the district court concluded, "Because disqualifying Denver Snuffer from the case at bar would result in significant financial and tactical prejudice to D.J., and in light of [SunCrest's] untimely filing of its Motion to Disqualify, this Court rejects [SunCrest's] motion and declines to disqualify Denver Snuffer from this litigation."

¶ 8 On the issue of timeliness, SunCrest has asserted that its motion was timely because the district court did not rule that parol evidence of the parties' intent regarding provision 14 would be necessary until November 17, 2003, when the district court denied D.J.'s motion for summary judgment. SunCrest explains that, prior to that time, it believed that the terms of provision 14 were unambiguous and that there would therefore be no need for Snuffer's testimony regarding the parties' intent. But the district court found that, at minimum, SunCrest's argument established that there was a three month delay before it filed the motion to disqualify. Further, the district court found that SunCrest was placed on notice that D.J. intended to rely on parol evidence when D.J. filed its motion for summary judgment on December 20, 2002, and that D.J.'s reliance on parol evidence "became abundantly clear" at oral argument on August 27, 2003. It also noted that "[SunCrest's] own pleadings intimate that [SunCrest] has 'reasonably foreseen,' since the initiation of this litigation[,] that Snuffer might be called as a witness in the case at bar."

¶ 9 SunCrest filed an interlocutory appeal of the denial of its motion to disqualify Snuffer with the court of appeals, arguing that the district court erred in not properly balancing the interests of the parties.[2] The court of appeals affirmed, holding that the district court applied the correct balancing standard and did not abuse its discretion in deciding that the interests weighed against disqualifying Snuffer.[3] It also affirmed on

the separate ground of untimeliness.[4] We granted certiorari to decide whether the court of appeals properly interpreted and applied rule 3.7(a)(3)'s substantial hardship exception. We have jurisdiction pursuant to Utah Code section 78-2-2(3)(j), (5).

## STANDARD OF REVIEW

¶ 10 On certiorari, we review for correctness the decision of the court of appeals, not the decision of the district court.[5] In this case, we review for correctness the court of appeals' interpretation of rule 3.7(a) as well as the court of appeals' selection of the standard of review and its application of that standard to the district court's substantial hardship analysis.

## ANALYSIS

¶ 11 Rule 3.7(a) of the Utah Rules of Professional Conduct states, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: . . . (a)(3) disqualification of the lawyer would work substantial hardship on the client." SunCrest argues that Snuffer is a necessary witness who should be disqualified in accordance with rule 3.7(a) and that we should therefore reverse the decision of the court of appeals. It asserts that the court of appeals did not correctly review the district court's conclusion that Snuffer's disqualification would cause substantial hardship to D.J. because the court of appeals did not require proper consideration of SunCrest's interests and the interests of the district court. In addressing SunCrest's arguments, we consider, first, whether the substantial hardship exception of rule 3.7(a)(3) requires courts to balance the interests of the client with the interests of the opposing party and tribunal, and, second, whether the court of appeals properly affirmed the district court's conclusion that the substantial hardship exception applies in this case.

---

2. *D.J. Inv. Group, L.L.C. v. DAE/Westbrook, L.L.C.,* 2005 UT App 207, ¶ 4, 113 P.3d 1022.

3. *Id.* ¶¶ 3, 5, 7.

4. *Id.* ¶¶ 6-7.

5. *State v. Brake,* 2004 UT 95, ¶ 11, 103 P.3d 699.

## I. THE SUBSTANTIAL HARDSHIP EXCEPTION REQUIRES A BALANCING OF INTERESTS CONSISTENT WITH THE ADVISORY COMMITTEE'S COMMENT TO RULE 3.7

¶ 12 We initially hold that both the court of appeals and the district court were correct in concluding that the substantial hardship exception of rule 3.7(a)(3) requires a balancing of the hardship that a lawyer's disqualification would cause to the lawyer's client against the prejudice that the opposing party would suffer if the lawyer were to act as an advocate-witness at trial. In addition, we recognize that new revisions to the advisory committee's note to rule 3.7 have clarified that the balancing contemplated by the substantial hardship exception also calls for consideration of the interests of the tribunal, but we conclude that these revisions do not undermine the balancing of interests conducted by the district court in this case.

¶ 13 Rule 3.7(a)(3) provides an exception to the advocate-witness prohibition where "disqualification of the lawyer would work substantial hardship on the client," but its plain language does not indicate how much hardship may be imposed on a client before the hardship becomes "substantial." [6] Although the term "substantial" is, by nature, inexact and leaves the district court significant discretion, the advisory committee's comment to rule 3.7 provides some factors that the district court should consider before deciding whether the hardship in a case is "substantial." [7] As amended on November 1, 2005, the advisory committee's note to rule 3.7 states that the substantial hardship exception contained in rule 3.7(a)(3) "recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party." [8] The comment further explains,

Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is a risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.[9]

¶ 14 While advisory committee comments to rules adopted by this court are not "authoritative," we give them "great weight." [10] We generally consider the comments a fairly reliable indicator of our intent in adopting the rules because the comments to the rules were available to this court at the time of their adoption.[11] In this particular case, where revisions to the advisory committee's comment to rule 3.7 were recently approved by this court, the advisory committee's comment carries even greater weight. We therefore conclude that, when determining whether the hardship to a client caused by disqualification of the client's lawyer is "substantial," and thus provides an exception to rule 3.7(a)(3)'s prohibition against acting in the dual role of advocate-witness, the courts should conduct a balancing of interests that is consistent with the comment to rule 3.7.

¶ 15 Our analysis thus far provides a simple prospective rule for courts applying the substantial hardship exception. However, for the purposes of this case, which was decided before our November 1, 2005 amendments to the comment, we must also consider whether the amendments indicate that the district court applied the wrong legal standard. Pursuant to the prior version of the advisory committee's comment to rule 3.7 of

6. Utah R. Prof'l Conduct 3.7(a)(3).

7. Utah R. Prof'l Conduct 3.7 advisory committee's comment.

8. *Id.*

9. *Id.*

10. *Burns v. State*, 2006 UT 14, ¶ 18 n. 6, 133 P.3d 370 (discussing the weight of the advisory committee's notes to the Utah Rules of Evidence); *see also Featherstone v. Schaerrer*, 2001 UT 86, ¶ 23, 34 P.3d 194 (citing "the official comment" to rule 4.2 of the Utah Rules of Professional Conduct).

11. *Burns*, 2006 UT 14, ¶ 18 n. 6, 133 P.3d 370.

the Utah Rules of Professional Conduct,[12] the district court expressly balanced the interests of the client against the interests of the opposing party to determine whether the hardship to the client was "substantial" but did not discuss the interests of the tribunal.[13] SunCrest argues that the district court's omission of the tribunal's interest was a legal error. We disagree.

¶ 16 We view the addition of the tribunal's interest as a refinement granting additional discretion to the tribunal in conducting the substantial hardship balancing. Our November 2005 amendments to the advisory committee's comment to rule 3.7 leave the core balancing test intact and do not add any new factors. Instead, it indicates that the factors that are relevant to whether the opposing party is likely to suffer prejudice are also relevant to determining whether the "tribunal is likely to be misled." [14] Under the revised comment, there is significant overlap between the interests of the tribunal and the interests of the parties. For example, in this case, SunCrest argues that the district court has an interest in avoiding the frequent intervention needed to remedy the jury confusion that naturally results when a lawyer acts as both an advocate and a witness in the same trial. But we note that the district court may also have an interest in avoiding the delay and confusion that results when new counsel is introduced late into a complex case. These interests overlap with SunCrest's interest in avoiding jury confusion and with D.J.'s interest in avoiding the difficulties associated with bringing new counsel up to speed late in a case. Ultimately, the revised comment to rule 3.7 gives the district court the power to decide which interests are stronger and to factor its own interests into the balancing.

¶ 17 In sum, we recognize that separate consideration of the interests of the tribunal under the revised advisory committee's comment to rule 3.7 may more clearly account for the broader impact of a lawyer's involvement or disqualification. But because of the substantial overlap between the interests of the court and the parties and the revised comment's effect of resting more discretion in the trial court, we conclude that express consideration of the tribunal's interest is not indispensable to the balancing in this case. Given that the district court applied the substantial hardship analysis described by the comment to rule 3.7 prior to the 2005 amendments, it did not err by balancing only the interests of the parties.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DETERMINING THAT DISQUALIFICATION OF SNUFFER WOULD CAUSE SUBSTANTIAL HARDSHIP TO D.J.

¶ 18 Having determined that the court of appeals correctly interpreted the substantial hardship exception of rule 3.7, we now proceed to answer the second part of the question on certiorari; namely, whether the court of appeals properly upheld the district court's application of rule 3.7(a)'s substantial hardship exception. We hold that it did. Our analysis on this point requires two steps. We will first consider whether the court of appeals appropriately selected the deferential abuse of discretion standard of review that it applied to the district court's decision. Because we conclude that it did, we will then consider whether the court of appeals correctly applied this standard in reviewing the district court's determination that Snuffer's disqualification would cause substantial hardship to D.J.

12. *See* Utah R. Prof'l. Conduct 3.7 advisory committee's comment (2005) (amended Nov. 1, 2005) ("[P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disquali-

fied, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.").

13. *D.J. Inv. Group, L.L.C. v. DAE/Westbrook, L.L.C.*, 2005 UT App 207, ¶ 4, 113 P.3d 1022.

14. *See* Utah R. Prof'l Conduct 3.7 advisory committee's comment.

## A. The Court of Appeals Properly Applied a Deferential Standard of Review to the District Court's Substantial Hardship Determination

¶ 19 The court of appeals stated that it gave the district court "some deference" in its application of the substantial hardship exception to the facts of this case, and it reviewed the district court's substantial hardship analysis under an "abuse of discretion" standard of review.[15] SunCrest argues that the district court failed to consider SunCrest's interests and that this failure constituted a mistake of law that the court of appeals should have reviewed for correctness rather than for an abuse of discretion. We hold that the court of appeals properly applied a deferential abuse of discretion standard, though the deference given to the district court's substantial hardship determination should be characterized as "broad deference" rather than "some deference."

¶ 20 Because the district court stated that it had balanced the interests of both parties as required by the advisory committee's comment to rule 3.7, we have already concluded that the district court did not make a mistake of law regarding the legal standard to be applied, as SunCrest contends. The question we now consider is a mixed question of fact and law—whether the district court appropriately applied the substantial hardship exception to the facts before it.

¶ 21 To select the appropriate standard of review for this mixed question, we turn to the three-factor test described in *State v. Levin*.[16] Under that test, we select a standard of review from along a spectrum of deference by weighing the following factors:

(1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on "facts" observed by the trial judge such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.[17]

¶ 22 These factors weigh in favor of granting broad deference to a district court's application of the substantial hardship exception. First, the facts involved in district courts' substantial hardship determinations are " 'so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out.' "[18] Although the advisory committee comment to rule 3.7 gives helpful guidance in the form of factors that are relevant to determining whether a lawyer's dual role as an advocate-witness would ordinarily harm the interests of the opposing party or tribunal, these factors are generally open-ended and leave much discretion to the district court.[19] Even when factors demonstrating prejudice are present, the comment instructs that the district court must give "due regard ... to the effect of disqualification on the lawyer's client."[20]

¶ 23 Second, the substantial hardship inquiry relies on observations made by the district court regarding the proceeding and the parties before it that cannot adequately be reflected in the record. The district court is intimately connected with its own interests in the case and has special knowledge of other relevant facts, including the nature of the case, the importance and probable tenor

15. *D.J. Inv. Group, L.L.C.*, 2005 UT App 207, ¶ 3, 113 P.3d 1022.

16. 2006 UT 50, ¶ 25, 144 P.3d 1096.

17. *Id.* (internal quotation marks omitted).

18. *Id.* ¶ 28, 144 P.3d 1096 (quoting *State v. Pena*, 869 P.2d 932, 939 (1994)).

19. *See* Utah R. Prof'l Conduct 3.7 advisory committee's comment ("Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the

case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.").

20. *Id.*

of the lawyer's testimony, and the effect that disqualification would have on the lawyer's client. The district court is also in a better position to understand whether either of the parties should have foreseen that the lawyer would become a necessary witness and whether this tends to show that the hardship to the client should be discounted or that the motion to disqualify is motivated by gamesmanship.

¶ 24 Third, policy considerations weigh in favor of granting additional deference. In *Houghton v. Department of Health*,[21] we said that "[t]rial courts are usually given broad discretion in controlling the conduct of attorneys in matters before the court" and that "their discretion extends to deciding whether disqualification is a proper sanction after a finding of an ethical violation."[22] But we also held that "to the extent this court has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited."[23]

¶ 25 Although the substantial hardship exception of rule 3.7(a)(3) is contained within an ethical rule and plays a role in directing a lawyer's professional conduct, it is concerned more with establishing the appropriate course of action after an ethical problem has arisen than with defining the ethical violation itself. When a district court makes a substantial hardship determination, it is essentially deciding whether disqualification is a proper solution to the ethical and logistical problems that are caused when a party's lawyer becomes a necessary witness in the case. Therefore, the policy factor weighs in favor of granting broad discretion to the district court. In sum, we conclude that all three factors weigh in favor of granting the district court broad discretion in applying the substantial hardship exception, and we review the district court's analysis for an abuse of that discretion.

B. *The District Court Did Not Abuse Its Discretion When It Concluded that Snuffer's Disqualification Would Cause Substantial Hardship to D.J.*

¶ 26 We finally review the district court's application of the substantial hardship exception in this case. The crux of SunCrest's appeal is its argument that the district court's written decision rejecting SunCrest's motion to disqualify Snuffer was one-sided, completely failing to consider SunCrest's interests, and that the district court therefore misweighed the parties' interests. However, our reading of the district court's written decision indicates that the court found the facts necessary to balance the interests of both parties and did not abuse its broad discretion in applying the balancing test to those facts.

¶ 27 We initially note that SunCrest assumes that the district court was required to make specific written findings associated with its denial. This assumption is not supported by the plain language of rule 52(a) of the Utah Rules of Civil Procedure.[24] Nevertheless, because the district court's written findings and analysis would be sufficient even if written findings were required, we do not further consider whether written findings were required in this case. Where written findings are required, "[a] trial court need not resolve every conflicting evidentiary issue.... Rather, the trial court's factual findings must be articulated with sufficient detail

---

21. 962 P.2d 58 (Utah 1998), *overruled on other grounds by Ark. Dep't of Health & Human Servs. v. Ahlborn*, —— U.S. ——, 126 S.Ct. 1752, 1756, 164 L.Ed.2d 459 (2006).

22. *Id.* at 61; *see also Featherstone v. Schaerrer*, 2001 UT 86, ¶ 30 n. 7, 34 P.3d 194 ("It is within [courts'] broad discretion to control the conduct of attorneys in matters before the court, especially where factual assessments are necessary to the determination of such violations." (alteration and internal quotation marks omitted) ).

23. *Houghton*, 962 P.2d at 61; *see also Spratley v. State Farm Mut. Auto. Ins. Co.*, 2003 UT 39, ¶ 8, 78 P.3d 603 ("This court ... has a special interest in the administration of the Rules of Professional Conduct and the discretion granted to the trial court in matters of disqualification is quite limited when there are no factual disputes.")

24. Utah R. Civ. P. 52(a) ("The trial court need not enter findings of fact and conclusions of law in rulings on motions ...."); *cf. State v. Poteet*, 692 P.2d 760, 763 (Utah 1984) (citing rule 52(a) for proposition that no written findings were required in connection with denial of motion to disqualify judge).

so that the basis of the ultimate conclusion can be understood." [25]

¶ 28 In this case, the district court expressly stated that it "weigh[ed] the interests of the parties" and found that D.J. would suffer substantial hardship if Snuffer were disqualified. Further, the district court's analysis shows that it considered relevant factors from the advisory committee's comment to rule 3.7 and found the facts necessary to its balancing of the parties' interests.

¶ 29 The advisory committee's comment to rule 3.7 mentions five factors that are relevant in assessing the interests of the parties.[26] The first three are relevant to the prejudice that an advocate-witness would impose on the opposing party and the tribunal.[27] The fourth factor considers the effect that the lawyer's disqualification will have on the client and specifies that "due regard must be given" to this effect even if there is risk of prejudice to the opposing party.[28] Finally, the fifth factor states, "It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." [29]

¶ 30 In applying the substantial hardship exception to the facts of this case, the district court focused its analysis on the fourth and fifth factors mentioned in the comment. The district court first discussed the complexity and length of the litigation, the size of the record filed with the court, and the expense and time that would be required for D.J. to bring new trial counsel into the case—all of which are relevant to the hardship imposed on D.J. The court then discussed SunCrest's culpability in contributing to D.J.'s hardship by failing to file its motion to disqualify Snuffer earlier in the parties' preparations for trial. The district court observed that "[SunCrest's] own pleadings intimate that [SunCrest] has 'reasonably foreseen,' since

the initiation of this litigation[,] that Snuffer might be called as a witness in the case at bar." Ultimately, the court concluded, "Because disqualifying Denver Snuffer from the case at bar would result in significant financial and tactical prejudice to D.J., and in light of [SunCrest's] untimely filing of its Motion to Disqualify, this Court rejects [SunCrest's] motion and declines to disqualify Denver Snuffer from this litigation."

¶ 31 The text and structure of this analysis show that the district court considered the facts that it found in connection with the fourth and fifth factors from the advisory committee comment to rule 3.7—the hardship caused to the lawyer's client and the ability of the parties to foresee the necessity of the lawyer's testimony—to define the parties' respective interests in this case. It is true, as SunCrest points out, that the district court did not explicitly make findings with regard to the first three factors that are listed in the advisory committee's comment to rule 3.7 as relevant to the opposing party's interests. But it is apparent from the district court's analysis that it considered the fifth factor, foreseeability, to be the factor most relevant to its assessment of SunCrest's interests. We do not assume that the district court ignored the factors from the comment to rule 3.7 that it did not explicitly address. Instead, we assume that the court discussed those factors it considered important to the result. In sum, we hold that the district court articulated its factual findings "with sufficient detail so that the basis of the ultimate conclusion can be understood." [30]

■ ¶ 32 Having established that the district court's findings regarding the parties interests were sufficiently articulated, we turn to consider whether the district court abused its discretion in weighing these fac-

---

25. *Consolidation Coal Co. v. Utah Div. of State Lands & Forestry*, 886 P.2d 514, 521 (Utah 1994) (alteration in original) (internal quotation marks and citation omitted).

26. Utah R. Prof'l Conduct 3.7 advisory committee's comment.

27. *Id.* ("Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the

importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses.").

28. *Id.*

29. *Id.*

30. *Consolidation Coal Co.*, 886 P.2d at 521.

tors with respect to the substantial hardship exception. We conclude that it did not. As we discussed above, the advisory committee's comment to rule 3.7 does not indicate how the factors should be weighed together, and it leaves much discretion to the district court to determine whether a lawyer should be disqualified.[31] Furthermore, the district court's interpretation of the factors in the context of this case appears to be quite reasonable.

¶ 33 A delay in filing a motion to disqualify counsel or in notifying opposing counsel that a motion to disqualify is likely raises concerns that the party who delays may be using the motion as a manipulative litigation tactic.[32] This concern naturally enters into the balancing of interests and is addressed, in part, by the "foreseeability" factor from the advisory committee's comment to rule 3.7.[33] In *Zions First National Bank v. Barbara Jensen Interiors, Inc.*,[34] the court of appeals stated that "[a] motion to disqualify counsel must be immediately filed and diligently pursued as soon as the party becomes aware of the basis for disqualification, and it may not be used as a manipulative litigation tactic." [35] Thus, the timeliness of the motion to disqualify is relevant to the balancing regardless of whether it also constitutes a separate ground for rejecting the motion to disqualify.

¶ 34 Ultimately, it appears that the district court concluded that SunCrest's culpability in filing an untimely motion was the factor most relevant to the weight of its interests and that, given SunCrest's weak claim to prejudice, the hardship to D.J. was significant enough for the substantial hardship exception to apply in this case. In so finding, the district court was acting within its broad

discretion to control the conduct of the attorneys in a matter before the court.

¶ 35 SunCrest offers three arguments in further support of its claim that the district court failed to adequately factor SunCrest's interests into the balancing test, none of which is persuasive. First, SunCrest claims that the district court erred because it simply assumed that Snuffer's testimony was necessary under rule 3.7 rather than making a specific factual finding to that effect. SunCrest argues that, by doing so, the court inevitably gave too little weight to SunCrest's interests, which depend in part on "the importance and probable tenor of the lawyer's testimony" and "the probability that the lawyer's testimony will conflict with that of other witnesses." We do not agree. The district court advanced judicial economy in the face of a complex factual dispute by making only those findings that were dispositive to its balancing of interests and assuming that other facts favored SunCrest.

¶ 36 Second, SunCrest argues that monetary hardship should never be sufficient to support a finding of "substantial hardship." However, there is nothing in the language of rule 3.7 that requires the potential hardship to the client to be unique or of a nonmonetary nature, only "substantial." [36]

¶ 37 Third, SunCrest argues that the district court misunderstood the scope of the disqualification required by rule 3.7 and that this misunderstanding led the district court to ascribe too much weight to D.J.'s interests. Although SunCrest is likely correct that rule 3.7 would not require a lawyer to be disqualified from the case altogether, but only from acting as trial counsel,[37] the district court's written decision contains no dis-

---

**31.** *See supra* ¶¶ 22–25.

**32.** *See* Utah R. Prof'l Conduct scope ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."); *see also Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 480–81 (Utah Ct.App.1989) ("A motion to disqualify ... may not be used as a manipulative litigation tactic.").

**33.** Utah R. Prof'l Conduct 3.7 advisory committee's comment.

**34.** 781 P.2d at 480–81.

**35.** *Id.*

**36.** Utah R. Prof'l Conduct 3.7 advisory committee's comment.

**37.** *See* Utah R. Prof'l Conduct 3.7(a) ("A lawyer shall not act *as advocate* at a trial in which the lawyer is likely to be a necessary witness unless ... [ (3) ] disqualification of the lawyer would work substantial hardship on the client." (emphasis added) ).

cussion of the extent of the disqualification required by rule 3.7, and the decision gives no indication that the district court misinterpreted the extent of Snuffer's disqualification when it weighed the interests of the parties.

¶ 38 Furthermore, we note that in this case the district court based its assessment of the hardship to D.J. on the significant time and expense required to introduce a new lawyer into this complex case and on the tactical disadvantage that Snuffer's disqualification would cause to D.J. Because D.J. would not be able to avoid designating new trial counsel if Snuffer were disqualified, D.J. would suffer very similar hardships regardless of the extent of Snuffer's disqualification. In sum, we hold that the court of appeals correctly concluded both that the district court's decision contained adequate findings to support its substantial hardship determination and that the district court did not abuse its discretion in finding that D.J. would suffer substantial hardship if Snuffer were disqualified.

### CONCLUSION

¶ 39 Although rule 3.7 of the Utah Rules of Professional Conduct generally prohibits a lawyer from acting as both an advocate and a witness at the same trial, that rule provides an exception where the client would suffer "substantial hardship" as a result of the lawyer's disqualification. We hold that the "substantial hardship exception" requires a balancing of interests as described in the advisory committee comment to rule 3.7 of the Utah Rules of Professional Conduct, but that the court of appeals did not err in following the prior version of rule 3.7's advisory committee's comment in this case. Furthermore, we conclude that the district court's substantial hardship determination is a mixed question of fact and law that implicates the district court's broad discretion to control the conduct of the lawyers before it. We therefore give significant deference to the district court's substantial hardship determination. Finally, we hold that the court of appeals correctly concluded that the district court did not abuse its discretion when it weighed the interests of the parties and decided that, in light of SunCrest's delay in filing the motion to disqualify and the financial and tactical

hardship that would be suffered by D.J. if Snuffer were disqualified, the substantial hardship exception applied in this case. We therefore affirm.

¶ 40 Chief Justice Durham, Associate Chief Justice Wilkins, Justice Parrish, and Justice Nehring concur in Justice Durrant's opinion.