2007 UT App 62

**WEST VALLEY CITY, Plaintiff and Appellee,**

v.

**Stanley FIEEIKI, Defendant and Appellant.**

**No. 20050459–CA.**

Court of Appeals of Utah.

Feb. 23, 2007.

Elizabeth Hunt, Yengich Rich & Xaiz, Salt Lake City, for Appellant.

J. Richard Catten and Carol Dain, West Valley City Attorney's Office, West Valley City, for Appellee.

Before GREENWOOD, Associate P.J., BILLINGS and McHUGH, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Stanley Fieeiki appeals his jury conviction of simple assault, a class B misdemeanor. *See* Utah Code Ann. § 76–5–102 (2003). On appeal, Defendant requests a new trial, claiming that the trial court committed prejudicial error in admitting incriminating statements Defendant made in the course of alleged plea discussions. We affirm.

## BACKGROUND

¶ 2 On August 4, 2003, Defendant, who at the time worked as a Utah Highway Patrol

officer, and his wife were involved in a domestic dispute at their home in West Valley City (the City). Following this dispute, Defendant's wife called the police. The police were dispatched to Defendant's house and arrested him.

¶ 3 Fearing the impact that a domestic violence charge would have on his job, Defendant retained defense counsel. Prior to September 9, 2003, defense counsel had several conversations with John Huber, the City attorney prosecuting the case. Defense counsel testified that these conversations were part of settlement negotiations as to whether the City would file charges and, if so, whether the City would offer a plea in abeyance. Huber testified that no plea negotiations occurred during these conversations and that he told defense counsel that "[the City was not] interested in negotiating, short of a trial, without a lot of stipulations on [Defendant's] part."

¶ 4 On September 9, 2003, Defendant, defense counsel, a City prosecutor, and an investigator employed with the City met at the City Attorney's offices. Huber, who was involved in the prior conversations with defense counsel and who was responsible for making charging determinations, did not attend the meeting.

¶ 5 At the time of the meeting, Defendant was not in custody and had not been charged with any crimes related to the August 4, 2003 incident. Prior to the meeting, defense counsel informed the investigator that it would not be necessary to Mirandize Defendant on the record. Specifically, defense counsel stated to the investigator that "[Defendant] wasn't in custody; he had come in voluntarily; he was with a lawyer; he was a law enforcement officer, ... [and that f]or all those reasons, or for any one of those, [defense counsel] didn't think it was necessary for there to be any kind of Miranda warning."

¶ 6 The recorded transcript indicates that the meeting began with Defendant giving a statement as to the events that occurred on the night of the crime and proceeded in a question/answer format with the investigator asking most of the questions. The City pros-

ecutor asked Defendant several questions toward the meeting's conclusion.

¶ 7 Specifically, at the start of the meeting, the investigator stated on the record that "[Defendant] is here to give a statement regarding an incident which occurred here in West Valley [City]." Defendant then affirmed that he knew that the meeting was being recorded and that he was voluntarily giving the statement. The investigator then said to Defendant:

> What we would like to do is have you review with us ..., basically give us your side of the story.... What I'd like you to do, without me asking a lot of questions is just, ... review the details of what you remember that night.... Can you do that for us?

In response, Defendant recited his version of the events that occurred on the evening of the crime. During this recitation, Defendant made incriminating recorded statements regarding his involvement in the assault.

¶ 8 The meeting transcript reveals that at no point in the meeting did the parties expressly refer to pleas, plea settlements, plea negotiations, plea discussions, pleas in abeyance, or dismissed charges. Defense counsel spoke only twice during the course of the meeting. At the end of the meeting, a dialogue ensued between defense counsel and the investigator:

> [investigator:] "Well, those are all the things that I'm sure you will be bringing up, and you can talk to ... Huber about."
>
> ....
>
> [defense counsel:] "I figured you guys would do this. Do you know what time frame you guys are working with?"
>
> ....
>
> [investigator:] "Hopefully, I'll have a decision on this rather quick now that we've got a statement."

¶ 9 The purpose of the meeting is disputed. Defense counsel testified that plea negotiations would be the only reason for such a meeting and for Defendant making the incriminating statements he made at the meeting. Defendant testified that he was reluctant to attend the meeting because "[he] knew that if [he] went in and told them what

had happened, the full, true, honest story, that they would have [his] side of the story, of the situation that occurred"; he would not have gone to the meeting if plea negotiations had not been pending; and he only attended the meeting because his experienced defense attorney had assured him that any statements he made would not be used against him. In contrast, Huber testified that defense counsel had indicated that the reason for the meeting was that defense counsel wanted Huber "to hear [his] guy" and that Huber's understanding of the meeting was that Defendant "wanted to be upfront ... [and] honor[ ] his profession." Likewise, the City prosecutor who attended the meeting stipulated that no plea negotiations occurred before the meeting. The investigator testified that he was not party to any plea negotiations.

¶ 10 Defense counsel testified that after the meeting, Huber "said he's not going to change the offer[,] ... [t]he offer is not going to get any better[,] ... [and i]t is still a plea in abeyance." Huber testified that at some point, possibly before the meeting, he offered to dismiss the domestic violence in the presence of a child charge, a class B misdemeanor, "in exchange for the full guilty plea to the more serious count" of domestic assault, a class A misdemeanor, but "that [the City] w[as] not budging on the assault [charge]."

¶ 11 The City eventually charged Defendant with domestic assault and domestic violence in the presence of a child. The City later dismissed the second charge.

¶ 12 On September 2, 2004, Defendant moved to suppress the incriminating statements that he made during the September 9, 2003 meeting, alleging that these statements were inadmissible because they were made in the course of plea discussions. The trial court denied Defendant's motion, concluding that although the case involved conflicting testimony, the transcript of the meeting showed that Defendant's statements were made in the context of an ongoing criminal investigation.

¶ 13 At trial in 2005, the jury heard the incriminating statements Defendant made at the September 9, 2003 meeting. The jury convicted Defendant of simple assault, a class B misdemeanor. Defendant lost his job as a result of his conviction.

¶ 14 Defendant appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 15 Defendant argues that the trial court committed prejudicial error in admitting incriminating statements he made during alleged plea discussions. Utah courts have not previously established the proper standard to apply in reviewing trial court determinations of whether statements were made during plea discussions. Several federal and state courts have stated that "[a]s a mixed question of law and fact, we ordinarily review de novo a district court's determination that a statement was given in the course of plea [discussions]." *United States v. Young*, 223 F.3d 905, 908 (8th Cir.2000); *see also United States v. Olson*, 450 F.3d 655, 680 (7th Cir. 2006); *North Dakota v. Genre*, 712 N.W.2d 624, 634 (N.D.2006); *Washington v. Nowinski*, 124 Wash.App. 617, 102 P.3d 840, 842–43 (2004). But other courts have concluded that a "determination of whether the parties were engaged in plea discussions is a factual finding reviewed for clear error." *United States v. Sitton*, 968 F.2d 947, 956 (9th Cir.1992); *see also United States v. Little*, Nos. 92–6719, –6720, –6721, 1993 WL 501570, at *3, 1993 U.S. App LEXIS 31934, at *8 (6th Cir. Dec. 6, 1993) (per curiam); *Gilliam v. Indiana*, 650 N.E.2d 45, 49 (Ind.Ct.App. 1995).

¶ 16 Because the question of whether statements were made in the course of plea discussions involves the application of a legal principle to a given set of facts, we apply the policy-based balancing test recently set forth by the Utah Supreme Court in *State v. Levin*, 2006 UT 50, 144 P.3d 1096, to determine the proper standard of review. In *Levin*, the supreme court set out a three-factor test for determining the appropriate standard of review for mixed questions of law and fact, *see id.* at ¶ 25, under which the court "select[s] a standard of review from along a spectrum of deference that runs from highly deferential review under a clearly erroneous standard on one end to completely nondeferential review under a correctness

standard on the other end." *Id.* at ¶ 19 (quotations omitted). To determine the appropriate

standard of review from along a spectrum of deference[, the court] weigh[s] the following factors:

(1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on "facts" observed by the trial judge such as a witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to appellate courts; and (3) other policy reasons that weigh for or against granting discretion to trial courts.

*D.J. Inv. Group, L.L.C. v. DAE/Westbrook, L.L.C.,* 2006 UT 62, ¶ 21, 147 P.3d 414 (quoting *Levin,* 2006 UT 50 at ¶ 25, 144 P.3d 1096).

¶ 17 In deciding the proper standard of review for appellate courts to apply in reviewing trial court determinations of whether statements were made in the course of plea discussions, we conclude that both the complexity of the facts and the observations of the witnesses weigh in favor of discretion. However, "uniform application is of high importance [and], as in the context of Fourth Amendment protections, . . . policy considerations dictate that the application of the legal concept should be strictly controlled by the appellate courts." *Levin,* 2006 UT 50 at ¶ 23, 144 P.3d 1096; *see also id.* at ¶ 26 (noting that "[e]ven where a case for appellate defer-

ence is strong under the first two factors, policy considerations may nevertheless lead us to limit that deference"). Given this interplay, we defer to the trial court's factual determinations but grant no deference to the trial court's ultimate conclusion—i.e., whether the statements were made in the course of plea discussions—and review this conclusion for correctness. *See id.* at ¶ 23.

## ANALYSIS

¶ 18 Defendant contends the trial court committed prejudicial error in admitting incriminating statements he made at the September 9, 2003 meeting because these statements were made in the course of plea discussions and thus were inadmissible under Utah Rule of Evidence 410.[1] *See* Utah R. Evid. 410.

¶ 19 Utah Rule of Evidence 410 provides that

evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

. . .

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Utah R. Evid. 410(4).[2] Thus, for statements to be inadmissible under rule 410, the statements must be made "in the course of plea discussions," and those plea discussions must have been "with an attorney for the prosecut-

---

1. Although Defendant also argues that the statements are inadmissible under Utah Rule of Evidence 408, *see* Utah R. Evid. 408, Defendant's analysis relies primarily on rule 410, and we see no different result under rule 408.

2. Utah Rule of Evidence 410 states in full that

[e]xcept as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

(1) a plea of guilty which was later withdrawn;

(2) a plea of nolo contendere;

(3) any statement made in the course of any proceedings under [r]ule 11 of the Federal Rules of Criminal Procedure or comparable

state procedure regarding either of the foregoing pleas; or

(4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

Utah R. Evid. 410.

ing authority." *Id.; see also Roberts v. Kentucky,* 896 S.W.2d 4, 5 (Ky.1995) (laying out requisite elements under a state rule of evidence identical to Utah R. Evid. 410).

¶ 20 Utah courts have not previously established a legal framework for determining whether statements occurred in the course of plea discussions. In considering this issue of first impression, we note that because Utah Rule of Evidence 410 "is the federal rule, verbatim," Utah R. Evid. 410 Advisory Committee Note, it is appropriate that we consider federal authorities interpreting Federal Rule of Evidence 410. *See State v. Fedorowicz,* 2002 UT 67, ¶ 30 n. 1, 52 P.3d 1194 ("Although the Federal Rules of Evidence are a separate body of law from the Utah Rules of Evidence, if the reasoning of a federal case interpreting or applying a federal evidentiary rule is cogent and logical, we may look freely to that case, absent a Utah case directly on point, when we interpret or apply an analogous Utah evidentiary rule.").

¶ 21 A large number of federal courts that have addressed the issue have adopted the two-part test set forth in *United States v. Robertson,* 582 F.2d 1356 (5th Cir.1978), for determining when particular statements were made in the course of plea discussions.[3] *See, e.g., United States v. Conaway,* 11 F.3d 40, 42 (5th Cir.1993); *United States v. Little,* Nos. 92–6719, –6720, –6721, 1993 WL 501570, at *3, 1993 U.S.App. LEXIS 31934, at *8 (6th Cir. Dec. 6, 1993) (per curiam); *United States v. Guerrero,* 847 F.2d 1363, 1367 (9th Cir.1988); *United States v. O'Brien,* 618 F.2d 1234, 1240–41 (7th Cir.1980); *United States*

*v. Kearns,* 109 F.Supp.2d 1309, 1315 (D.Kan. 2000) (citing case that adopts *Robertson* test); *United States v. Bridges,* 46 F.Supp.2d 462, 465–66 (E.D.Va.1999); *United States v. Fronk,* 173 F.R.D. 59, 67 (W.D.N.Y.1997); *United States v. Melina,* 868 F.Supp. 1178, 1181 (D.Minn.1994); *United States v. Swidan,* 689 F.Supp. 726, 728 (E.D.Mich.1988); *United States v. Washington,* 614 F.Supp. 144, 148–49 (E.D.Pa.1985), *aff'd,* 791 F.2d 923 (3d Cir.1986).

¶ 22 Most state courts that have considered the issue have also applied the *Robertson* test. *See, e.g., Owen v. Crosby,* 854 So.2d 182, 189 (Fla.2003); *Illinois v. Hart,* 214 Ill.2d 490, 293 Ill.Dec. 290, 828 N.E.2d 260, 267 (2005); *Iowa v. Hovind,* 431 N.W.2d 366, 369 (Iowa 1988); *Maine v. Lavoie,* 551 A.2d 106, 108 (Me.1988); *Evans v. Mississippi,* 725 So.2d 613, 640 (Miss.1997); *McKenna v. Nevada,* 101 Nev. 338, 705 P.2d 614, 618 (1985); *North Dakota v. Genre,* 712 N.W.2d 624, 634 (N.D.2006); *Rhode Island v. Traficante,* 636 A.2d 692, 696 (R.I.1994).

■■■ ¶ 23 Following the lead of our federal and state counterparts, we also now adopt the *Robertson* test. To determine whether a statement is made in the course of plea discussions under the *Robertson* test: "The ... court must apply a two-tiered analysis and determine [1] whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and [2] whether the accused's expectation was reasonable given the totality of the objective circumstances."[4] *Robertson,* 582

---

**3.** In *United States v. Robertson,* 582 F.2d 1356 (5th Cir.1978), the alleged plea discussions occurred between a police officer and the defendant. *See id.* at 1359. In 1980, following the *Robertson* decision, federal rule 410 was amended from its then language excluding " 'statements made in connection with, and relevant to' withdrawn guilty pleas, nolo contendere pleas[,] or offers to plead," *United States v. Stein,* No. 04–269–9, 2005 WL 1377851, at *6, 2005 U.S. Dist. LEXIS 11141, at *20 (E.D. Pa. June 8, 2005) (quoting Fed.R.Evid. 410, Pub.L. No. 94–149, 89 Stat. 805 (1975)), to its present language excluding statements made in " 'discussions with an attorney for the prosecuting authority,' " *id.* at *6, 2005 U.S. Dist. LEXIS 11141, at *21 (quoting Fed.R.Evid. 410). *See id.* at *6–7, 2005 U.S. Dist. LEXIS 11141, at *18–24 (discussing in detail the " 'convoluted' " legislative history of fed-

eral rule 410, including the advisory committee notes' reference to the 1979 amendments and the rule's relationship to Federal Rule of Criminal Procedure 11 (citations omitted)). The purpose of the amendment was to exclude statements made to law enforcement officers. *See id.* at *7, 2005 U.S. Dist. LEXIS 11141, at *21.

**4.** As noted, the Fifth Circuit adopted the *Robertson* test prior to the 1980 amendment to federal rule 410. *See* 582 F.2d 1356 (1978); Fed.R.Evid. 410 Advisory Committee Notes (explaining that the amendment was adopted in 1979 but that the amendment's effective date was extended to December 1980). Prior to the 1980 amendment, the language of rule 410 did not refer to plea discussions. *See* Fed.R.Evid. 410, Pub.L. No. 94–149, 89 Stat. 805. The advisory committee notes to Federal Rule of Criminal Procedure

F.2d at 1366. The purpose behind the two-tier test is to ensure courts "focus[ ] on the accused's perceptions of the discussion, in context" while forfending "every confession [from] be[ing] vulnerable to such subsequent challenge." *Id.; see also Swidan,* 689 F.Supp. at 728 ("[T]his analysis protects the plea discussion process by preserving the accused's subjective expectations, while at the same time limiting self-serving, post hoc statements by the accused."). Determinations of whether statements constitute plea discussions under rule 410 must be made on a case-by-case basis. *See Robertson,* 582 F.2d at 1366 (stating that "each case must turn on its own facts"); *Kearns,* 109 F.Supp.2d at 1315 (emphasizing that "the court must look to the specific facts of each case").

■■■ ¶ 24 Importantly, under *Robertson,* the degree to which a defendant's subjective intent is apparent under the test's first prong affects the level of scrutiny the court applies when reviewing the objectiveness prong. *See Robertson,* 582 F.2d at 1367. That is, there are circumstances in which the defendant's subjective intent is unambiguous. *See id.* For example, a defendant may have "unilaterally offer[ed] to plead guilty, or to take the blame, in exchange for a government concession." *Id.* (quotations and citations omitted). Although, such " 'a preamble explicitly demarcating the beginning of plea discussions' " is not required, "such a preamble [when] delivered ... cannot be ignored." *Id.* (quoting *United States v. Herman,* 544 F.2d 791, 797 (5th Cir.1977)). Thus, in those cases where the defendant unequivocally expresses his or her subjective intent, and "the

objective circumstances show that a plea [discussion] expectation was reasonable, the inquiry may end." *Id.*

¶ 25 In contrast, however,

[i]n those situations, ... in which the record does not disclose a clear expression of a subjective intent on the part of the accused to pursue plea negotiations, the accused's after the fact expressions of his intent must be more carefully evaluated. The trial court must focus searchingly on the record to determine whether the accused reasonably had such a subjective intent, examining all the objective circumstances.

*Id.*

■■ ¶ 26 In its oral findings, the trial court stated that in reviewing the entire interview, "there is no indication whatsoever that there was an expectation of a negotiated plea during the interview." We agree. The transcript of the interview does not indicate "the accused exhibited an actual subjective expectation to [discuss] a plea at the time of the [meeting]." *United States v. Robertson,* 582 F.2d 1356, 1366 (5th Cir.1978). Instead, the transcript reveals that Defendant was told he was at the meeting to give a statement; Defendant responded to this remark by giving a statement; and, upon delivering his statement, Defendant proceeded to answer questions primarily put forth by the investigator. In the course of making his statement and responding to questions, neither Defendant nor any other person referred to pleas, plea settlements, plea negotiations, plea discussions, pleas in abeyance, or dismissed charges.[5]

11—a rule which, at the time, conformed to rule 410 and was comparably amended by the 1980 amendment, *see* Fed.R.Evid. 410, Notes of Advisory Committee on 1979 amendment; *see also Stein,* 2005 WL 1377851, at *6–7, 2005 U.S. Dist. LEXIS 11141, at *18–23 (explaining the relationship between the two rules, their identicalness, and the rules' legislative history)—explain that "by relating the statements to 'plea discussions,' rather than to 'an offer to plead,' the amendment ensures that even an attempt to open plea bargaining is covered under the same rule of admissibility." Fed.R.Crim.P. 11, Notes of Advisory Committee on 1979 amendments. The fact that rule 410 did not refer to plea discussions until after the 1980 amendment likely explains why the *Robertson* court uses the language of plea

negotiation rather than plea discussion. Based on the plain language of Utah Rule of Evidence 410, *see* Utah R. Evid. 410(4), the determination is one of plea discussions not plea negotiations and to avoid confusion we employ the plain language of the rule in our *Robertson* analysis.

5. Defendant claims that the dialogue between defense counsel and the investigator demonstrates a subjective expectation. But the record's and the briefs' recitation of this dialogue is extracted, and the reader does not know what was said prior to or after the extracted dialogue. Thus, it is very difficult to ascertain what exactly the parties were discussing and in what context the dialogue was taking place.

¶ 27 Furthermore, the surrounding circumstances support the trial court's conclusion that Defendant's statement was given in the context of investigation and screening, not in the course of plea discussions, and that Defendant did not exhibit an expectation to negotiate a plea. First, the prosecutor had not filed any charges at the time of the September 9, 2003 meeting. This fact is significant in the instant case because "plea [discussions] contemplate a bargaining process, a 'mutuality of advantage,' and a mutuality of disadvantage. That is, the government and the accused both seek a concession for a concession, a[q]uid pro quo." *Robertson*, 582 F.2d at 1365–66 (citation omitted). Thus, in this case, there was simply no context for negotiation. Second, Defendant was forewarned of his Miranda rights prior to the meeting, and defense counsel responded, without mention of a negotiation, that such warnings were not necessary because Defendant was not in custody and was a law enforcement officer. Third, Defendant's statement was recorded, supporting an inference that it might subsequently be used as evidence by the prosecution. Finally, in reviewing the credibility of the parties' after-the-fact statements of their intentions in attending the meeting, we defer to the trial court's credibility determinations.

¶ 28 Because we agree with the trial court that Defendant did not "exhibit[ ] an actual subjective expectation to [discuss] a plea at the time of the [meeting]," *id.*, we need not reach the second prong of the *Robertson* test. *See id.* at 1366 (stating that the court must determine that defendant exhibited a subjective expectation *and* that the expectation was objectively reasonable under the totality of the circumstances); *see also Melendez v. Florida*, 747 So.2d 1011, 1012 (Fla.Dist.Ct. App.1999) (addressing the subjective prong under *Robertson* analysis and not reaching the objective prong because the defendant had no subjective expectation).

## CONCLUSION

¶ 29 In sum, we conclude that the *Robertson* two-tier analysis is the appropriate test to apply in determining whether an accused's statements were made in the course of plea discussions. We further conclude that under this test, the trial court properly determined that Defendant exhibited no subjective expectation of plea discussions. We therefore affirm Defendant's conviction.

¶ 30 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge and CAROLYN B. McHUGH, Judge.